Commonwealth of Pennsylvania, Pennsylvania Public Utility Commission *v.* Laurel Pipe Line Company, Appellant.

Argued January 5, 1976, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Glenn E. Davis,* for appellant.

*Edward Munce,* Assistant Counsel, with him *Edward J. Morris,* Counsel, for appellee.

OPINION BY JUDGE KRAMER, March 5, 1976:

This is an appeal by Laurel Pipe Line Company from a temporary rate order entered August 22, 1975, by the Pennsylvania Public Utility Commission (PUC). The

question presented is whether the PUC committed an error of law in ordering a temporary rate after having suspended the effectiveness of Laurel's increased rate tariff filing for nine months. We hold that the PUC did not commit an error of law.

Laurel, a public utility subject to the jurisdiction of the PUC, filed the proposed tariff increases on September 30, 1974, to become effective November 1, 1974. Laurel voluntarily postponed the effectiveness of the tariff increases until December 1, 1974. By an order "adopted" November 26, 1974, and "entered" December 3, 1974, the PUC suspended the effectiveness or operation of the increased tariff from December 1, 1974 to June 1, 1975, a period of six months. By an order "adopted" May 22, 1975, and "entered" May 30, 1975, the PUC further suspended the effectiveness or operation of the increased tariff from June 1, 1975 to September 1, 1975, a period of three months, making a total suspension of nine months, as provided for in Section 308 of the Public Utility Law.[1]

---

1. Section 308 of the Public Utility Law (hereinafter Act), Act of May 28, 1937, P.L. 1053, *as amended*, 66 P.S. §1148, reads in pertinent part as follows:

"(a) Unless the commission otherwise orders, no public utility shall make any change in any existing and duly established rate, except after sixty days' notice to the commission, which notice shall plainly state the changes proposed to be made in the rates then in force, and the time when the changed rates will go into effect. . . . The commission, for good cause shown, may allow changes in rates, without requiring the sixty days' notice, under such conditions as it may prescribe.

"(b) Whenever there is filed with the commission by any public utility any tariff stating a new rate, the commission may, either upon complaint or upon its own motion, upon reasonable notice, enter upon a hearing concerning the lawfulness of such rate, and pending such hearing and the decision thereon, the commission, upon filing with such tariff and delivering to the public utility affected thereby a statement in writing of its reasons therefor, may, at any time before it becomes effective, suspend the operation of such rate for a period not longer than

In an order "adopted" August 19, 1975, and "entered" August 22, 1975, the PUC ordered that the effective rates collected during the suspension period be prescribed as temporary rates pursuant to Section 310 (a) of the Act,[2] for a 90-day period on and after September 1, 1975. On August 27, 1975, Laurel appealed to this Court specifying that the PUC erred in establishing the temporary rates because Laurel was not afforded notice, an opportunity to be heard, and a hearing, and also erred because the temporary rate order was, in effect, a suspension beyond the nine month period provided for in Section 308 of the Act.

The PUC filed a Motion to Quash alleging that the order appealed from was interlocutory and that the appeal did not state a cause of action. The PUC notes that

six months from the time such rate would otherwise become effective, and an additional period of not more than three months pending such decision. *The rate in force when the tariff stating the new rate was filed shall continue in force during. the period of suspension, unless the commission shall establish a temporary rate as authorized in section three hundred ten of this act.* The commission shall consider the effect of such suspension in finally determining and prescribing the rates to be thereafter charged and collected by such public utility." (Emphasis added.)

2.   Section 310 (a) of the Act, 66 P.S. §1150 (a), reads in pertinent part as follows:

"(a)   *The commission   may, in any proceeding involving the rates of a public utility* brought either upon its own motion or upon complaint, *after reasonable notice and hearing,* if it be of opinion that the public interest so requires, *immediately fix, determine, and prescribe temporary rates to be charged by such public utility, pending the final determination of such rate proceeding.* Such temporary rates, so fixed, determined, and prescribed, shall be sufficient to provide a return of not less than five per centum upon the original cost, less accrued depreciation, of the physical property (when first devoted to public use) of such public utility, used and useful in the public service. . . ." (Emphasis added.)

the statute provides for a mandatory recoupment in the event that the final rate order establishes rates higher than those set in the temporary rate order,[3] and argues that such an order is interlocutory and not appealable, unless the utility alleges that the formula set forth in Section 310 of the Act was not followed by the PUC. We will dismiss the Motion to Quash because if the PUC committed an error of law in issuing the temporary rate order, Laurel had a right to appeal with specifications of error. The PUC must follow the requirements of the Act when it fixes temporary rates.

Our scope of review is to determine if there was an error of law, a violation of constitutional rights, or lack of evidence to support the Commission's order. Section 1107 of the Act, 66 P.S. §1437.

Laurel contends that it did not receive the notice and an opportunity to be heard, which Section 310 of the Act requires before the Commission may fix temporary rates. This contention cannot stand the test of scrutiny of the record. The PUC's order of December 3, 1974, which

---

3. Section 310 (e) of the Act, 66 P.S. §1150 (e) reads as follows:

"(e) Temporary rates so fixed, determined, and prescribed under this section shall be effective until the final determination of the rate proceeding, unless terminated sooner by the commission. In every proceeding in which temporary rates are fixed, determined, and prescribed under this section, the commission shall consider the effect of such rates in fixing, determining, and prescribing rates to be thereafter demanded or received by such public utility on final determination of the rate proceeding. If, upon final disposition of the issues involved in such proceeding, the rates as finally determined, are in excess of the rates prescribed in such temporary order, then such public utility shall be permitted to amortize and recover, by means of a temporary increase over and above the rates finally determined, such sum as shall represent the difference between the gross income obtained from the rates prescribed in such temporary order and the gross income which would have been obtained under the rates finally determined if applied during the period such temporary order was in effect."

ordered the investigation into the rate increase, specifically provided:

"2. That this inquiry and investigation include consideration of the lawfulness of existing rates, rules and regulations, *and the imposition of temporary rates* under provisions of Section 310 of the Public Utility Law." (Emphasis added.)

This order gave Laurel notice that the PUC's investigation and hearings would include consideration of the imposition of temporary rates. Next, Laurel contends that it was not given a hearing. The record reveals that prior to the temporary rate order, entered August 22, 1975, hearings were held and evidence was received, which permitted the PUC to decide that the revenues received under the rates in existence prior to the rate filing and during the period of suspension provided a rate or return in excess of the 5 percent minimum set forth in Section 310 of the Act. In order to reach this decision the PUC adopted the original cost measure of value of plant in service, and the operating revenues and revenue deductions claimed by Laurel. The PUC adopted these claims "only for the purpose of this temporary rate order." Laurel did not make any specification of error or offer any objection to the statistics used by the PUC.[4]

Laurel argues that the PUC committed an error of law because the effect of the temporary rate order was to suspend the effectiveness of the increased rates for more than the nine-month statutory period provided for in Section 308 of the Act. This argument has no merit. Section 310(a) of the Act provides that the PUC may fix temporary rates "in any proceeding involving the rates of

---

4. On December 2, 1975, the PUC "entered" an order nisi (to become final without further action of the PUC unless exceptions were filed within 20 days from its date of the entry). In the order nisi the PUC concluded that Laurel was not entitled to any rate increase, and ordered that "the presently effective rates shall continue in effect as final rates."

a public utility . . . pending the final determination of such rate proceeding." Section 310 (e) of the Act provides that temporary rates "shall be effective until the final determination of the rate proceeding, unless terminated sooner by the commission."

Laurel seems to argue that the words "temporary rates" imply rates higher than those in existence before the rate filing is made. There is no such implication in the statute. The only proscription placed upon the PUC is that temporary rates must provide "a return of not less than five per centum upon the original cost, less accrued depreciation, of the physical property (when first devoted to public use) of such public utility. . . ." The whole purpose of temporary rates is to protect both the public and the public utility, the former so that it will not be overcharged, and the latter so that it may recoup any loss suffered during the period the temporary rate order is in effect. Recoupment for the loss suffered by the utility during a suspension period of a proposed rate increase which is later sustained, is discretionary; but recoupment for the period that a temporary rate order is in effect is mandatory, See *Pennsylvania Public Utility Commission v. Commonwealth of Pennsylvania*, 23 Pa. Commonwealth Ct. 566, A.2d (1976). Laurel is quite correct that the PUC is without power to extend the suspension period beyond nine months. If the PUC has suspended the effectiveness of Laurel's rate filing beyond September 1, 1975, we would reverse, because the statute clearly states that the filed tariff would become effective by operation of law, unless temporary rates are set before the filed tariff becomes effective by operation of law. The PUC, however, did not suspend beyond nine months. The PUC, in accordance with Section 310 of the Act, established temporary rates pending the final determination of the rate proceeding. The fact that the application of the legislatively mandated formula for temporary rates indicated

**566**

that the rates in existence prior to Laurel's rate filing were higher than the minimum required by Section 310 of the Act, permitted the PUC to establish those prior rates as temporary rates. As we have already stated, if those temporary rates were lower than the rates finally determined at the end of the rate proceeding, Laurel was fully protected in that it would have been permitted to recoup any difference. The PUC followed the requirements of the Act and did not commit an error of law. We therefore

ORDER

AND NOW, this 5th day of March, 1976, the order of the Pennsylvania Public Utility Commission in the above captioned matter, entered August 22, 1975, is hereby affirmed.