Duquesne Light Company, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

Heard July 12, 1977, before Judge ROGERS.

*Charles E. Thomas,* with him *Jack F. Aschinger, Carroll F. Purdy, Charles E. Thomas, Jr.,* and *Thomas & Thomas,* for petitioner.

*Kathleen Herzog Larkin,* First Assistant Counsel, with her *Michael Kerrigan,* Assistant Counsel, and *Barnett Satinsky,* Chief Counsel, for respondent.

*Albert D. Brandon,* for Consumer Advocate.

*Dennis S. Shilobod* and *Messer & Shilobod,* for private complainants.

*Marvin A. Fein,* for City of Philadelphia.

*Robert J. White* and *F. Bruce Abel,* for Armco Steel.

MEMORANDUM OPINION AND ORDER BY JUDGE ROGERS, July 13, 1977:

The Duquesne Light Company has filed a petition for review pursuant to both Sections 401 and 403(1) of the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, *as amended,* 17 P.S. §§211. 403(1), 211.401. Presently before this judge is Duquesne Light Company's "Application for Stay or Supersedeas" of a Public Utility Commission's order entered July 6, 1977 requiring Duquesne Light Company to reduce its rates and charges to a level which will produce gross revenues not in excess of 12 million dollars annually over rates in effect at June 30, 1976.

A very brief history of preceding events is as follows: In October 1976, Duquesne Light Company filed with the Commission Supplement No. 2 to its Tariffs proposing an annual increase in rates in the amount of about $128,000,000; with its filing, Duquesne Light Company asked for "Emergency Rate Relief" in the amount of $89,000,000; on October 20, 1976, Duquesne Light Company filed with the Commission a Petition for Emergency Rate Relief lowering the amount of its request for "Emergency Rate Relief" to about $87,000,000; on December 9, 1976, the Commission suspended the proposed $128,000,000 Supplement No. 2 but ordered that Duquesne might file another Supplement effective on the one day's notice designed to produce annual revenues not to exceed $60,000,000 in excess of those in effect at June 30, 1976, pending the Commission's investigation of Tariff Supplement No. 2; Duquesne filed such a Supplement; apparently some of the present respondents protested the December 9, 1976 order allowing the $60,000,000 increase, and the Commission referred the matter to an Administrative

Law Judge who, after conducting extensive hearings, filed a report and proposed decision upholding the December 9, 1976 order to which some of the parties below filed exceptions; the Administrative Law Judge's report was made March 22, 1977; the Commission did not act until by its order of July 6, 1977, which has been appealed and which we are asked to supersede, it reduced the $60,000,000 annual increase to $12,000,000.

We find nothing in the Public Utility Law as now written which provides for an application for "Emergency Rate Relief" or for the allowance of such by the Commission, without notice or hearing, as was done here by the order of December 9, 1976. The parties may have been anticipating amendments to the law effected by the Act of October 7, 1976, P.L. 1057 which permit, but not without hearing, "extraordinary rate relief." This change does not become effective until October 1977.

As we view the law, Sections 308 and 310, 66 P.S. §§1148, 1150, as now written, provide for the filing of a change in Tariff which becomes effective in 60 days, unless suspended by the Commission pending investigation. The Commission's suspension may be for no longer than nine months. If the utility needs relief in the meantime, the Commission may fix temporary rates. Temporary rates may, however, be established only "after reasonable notice and hearing." Hence, as we have observed, we are at a loss to understand the basis in law for the Commission's December 9, 1976 order. However, it was not appealed from. Rather, some of the present respondents seem to have protested its promulgation without hearing and an administrative law judge conducted extensive hearings. The Commission then promulgated its July 6, 1977 order reducing the increase in rate to $12,000,000 annually.

It is our opinion that the July 6, 1977 order was one fixing temporary rates pursuant to Section 310 of the Public Utility Law, and that this Court may not disturb that order by stay or supersedeas. Section 1111 of The Public Utility Code, 66 P.S. §1441 forbids us from staying Commission orders where jurisdiction is not in question. Since the order was one the Commission could make we see no jurisdiction problem.

We add to this memorandum a reminder that an incident of temporary rates is that if the rates finally determined are in excess of temporary rates, the public utility may recover by a temporary increase over the rates finally determined the difference between the gross income obtained from the temporary rates and the gross income which would have been obtained under the rates finally determined if applied during the period the temporary rates were in effect.

We have given careful consideration to Duquesne Light Company's three arguments: first, that the $60,-000,000 tariff which it filed pursuant to the Commission's December 9, 1976 order became an existing and duly established rate which could not under Section 308 be thereafter changed by the Commission; second, that the July 6, 1977 order is of no effect because the Commission did not rule on exceptions to the administrative law judge's proposed decision as required by the Act of October 7, 1976, P.L. 1075, amending Section 7 of the Act of March 31, 1937, P.L. 160, 66 P.S. §458.6; and third, that the Commission violated the Sunshine Law. We find them unpersuasive.

## Order

And Now, this 13th day of July, 1977, it is ordered, adjudged and decreed that the Duquesne Light Company's application for a stay or supersedeas be and the same hereby is refused.

PER CURIAM MEMORANDUM OPINION AND ORDER, July 29, 1977:

By order dated July 13, 1977, Judge ROGERS refused to supersede an order of the Public Utility Commission entered July 6, 1977 reducing a so-called emergency rate increase earlier allowed Duquesne Light Company in the amount of 60 million dollars to the amount of 12 million dollars annually. Duquesne Light Company has now filed an application for reargument of its application for supersedeas. The application for reargument will be refused.

Duquesne's principal contention, and the only one meriting further discussion, is that the 60 million dollar annual rate increase allowed by the Commission on December 9, 1976 was a new tariff, not subject to change by the Commission. It relies principally on Section 308 of the Public Utility Law, 66 P.S. 1148. That section is as follows:

(a) Unless the commission otherwise orders, no public utility shall make any change in existing and duly established rate, except after sixty days' notice to the commission, which notice shall plainly state the changes proposed to be made in the rates then in force, and the time when the changed rates will go into effect. The public utility shall also give such notice of the proposed changes to other interested persons as the commission in its discretion may direct. All proposed changes shall be shown by filing new tariffs or supplements to existing tariff filed and in force at the time. *The commission, for good cause, shown, may allow changes in rates, without requiring the sixty days' notice, under such conditions as it may prescribe.* (Emphasis added.)

(b) Whenever there is filed with the commission by any public utility any tariff stating a new rate, the commission may, either upon complaint or upon its own motion, upon reasonable notice, enter upon a hearing concerning the lawfulness of such rate, and pending such hearing and the decision thereon, the commission, upon filing with such tariff 'and delivering to the public utility affected thereby a statement in writing of its reasons therefor, may, at any time before it becomes effective, suspend the operation of such rate for a period not longer than six months from the time such rate would otherwise become effective, and an additional period of not more than three months pending such decision. *The rate in force when the tariff stating the new rate was filed shall continue in force during the period of suspension, unless the commission shall establish a temporary rate as authorized in section three hundred ten of this act.* The commission shall consider the effect of such suspension in finally determining and prescribing the rates to be thereafter charged and collected by such public utility. (Emphasis added.)

(c) If, after such hearing, the commission finds any such rate to be unjust or unreasonable, or in anywise in violation of law, the commission shall determine the just and reasonable rate to be charged or applied by the public utility for the service in question, and shall fix the same by order to be served upon the public utility; and such rate shall thereafter be observed until changed as provided by this act.

Duquesne, depending on the emphasized last sentence of Section 308(a), says that the Commission could,

without notice or hearing, carve out of its, Duquesne's, singular tariff filing on the amount of 128 million dollars, the amount of 60 million dollars annually and allow this increase pending a final decision on the requested $128,000,000 increase. Duquesne's argument overlooks the fact that the Commission suspended the 128 million dollar proposed tariff. The sentence of Subsection 308(b) which we have emphasized, could not more explicitly state that where a tariff has been suspended no new rate may be effective except one fixed as a temporary rate pursuant to Section 310. In our view, the emphasized sentence of Subsection 308(a), on which Duquesne relies, means only that the Commission may permit a tariff to go into effect before the expiration of the 60 days notice period fixed by that subsection. Subsection 308(a) does not deal with a tariff which the Commission has suspended but with a tariff which the Commission believes for good cause should become effective before the expiration of 60 days notice period.

Further, the nine months period for suspension of the $128,000,000 tariff will expire in September of 1977. The reduction in increased revenues effected by the July 6, 1977 order is from five million dollars a month to one million dollars a month for about two months. We are not convinced that this reduction, which, as Judge ROGERS pointed out in his earlier order may be recouped when rates are finally determined, is such a hardship as to justify superseding the Commission's order.

## ORDER PER CURIAM

AND Now, this 29th day of July, 1977, the application of Duquesne Light Company for reargument is refused.