Duquesne Light Company, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent. Office of the Consumer Advocate, Private Complainants, City of Pittsburgh, Armco Steel Corporation and Crucible Steel, Inc., Intervenors, and United States Steel Corporation, Intervenor.

Mark Widoff, the Consumer Advocate, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent. United States Steel Corporation, Intervenor.

The City of Pittsburgh, and its Mayor, Richard S. Caliguiri, Petitioners *v.* Pennsylvania Public Utility Commission, Respondent. United States Steel Corporation, Intervenor.

Private Complainants, Arnheim & Neely, Inc., Agents for Multi Vest Real Estate Fund, Ltd. Series III et al., Petitioners *v.* Pennsylvania Public Utility Commission, Respondent. United States Steel Corporation, Intervenor.

Argued December 7, 1977, before President Judge
BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR.,
ROGERS, BLATT and DISALLE.

*Charles E. Thomas* and *Carroll F. Purdy,* with
them *Jack F. Aschinger, Charles E. Thomas, Jr.,* and
*Thomas and Thomas,* for Duquesne Light Company.

*Kathleen Herzog Larkin,* First Assistant Counsel, with her *Barnett Satinsky,* Chief Counsel, for Pennsylvania Public Utility Commission.

*Albert D. Brandon,* for Consumer Advocate.

*Dennis S. Shilobod,* with him *Messer & Shilobod,* for private complainants.

*Marvin A. Fein,* Utilities Counsel, with him *Mead J. Mulvihill, Jr.,* City Solicitor, for City of Pittsburgh and Mayor Richard S. Caliguiri.

OPINION BY JUDGE ROGERS, February 23, 1978:

This passionately contested electric utility rate case began on October 1, 1976 when Duquesne Light Company filed with the Pennsylvania Public Utility Commission (PUC) its Supplement No. 2 to Tariff Electric Pa. P.U.C. No. 14, proposing an annual revenue increase of $127,897,362, issued to become effective November 30, 1976. On the same day Duquesne filed a "Petition for Emergency Rate Relief" requesting that $87,273,696 of its requested revenue increase be allowed to become effective on November 30, 1976 or as soon thereafter as possible.[1]

On December 17, 1976 the PUC entered an order which it had adopted without hearing on December

---

[1] It is noted that Duquesne did not, in accordance with the practice which had lately developed and which was approved in *P.U.C. v. Commonwealth,* 23 Pa. Commonwealth Ct. 566, 353 A.2d 887 (1976), file multiple tariffs, some of which the PUC might allow to become effective, while suspending and investigating others. Its "Petition for Emergency Rate Relief" seems to anticipate the effective date, October 7, 1977, of an amendment to Section 308 of the Public Utility Law, Act of May 28, 1937, P.L. 1053, *as amended,* 66 P.S. §1148, made by the Act of October 7, 1976, P.L. 1057, authorizing petitions for extraordinary rate relief of portions of the total rate relief requested.

9, 1976 (hereinafter referred to as the December 9, 1976 order) providing (1) that an investigation of the rates proposed in Duquesne's Tariff Supplement No. 2 be instituted, (2) that the investigation include consideration of the lawfulness of existing rates and the imposition of temporary rates under Section 310 of the Public Utility Law, 66 P.S. §1150, (3) that Supplement No. 2 be suspended for six months, and (4) that Duquesne "may file a tariff supplement designed to produce an increase in annual revenue not to exceed $60,000,000, provided, however, that the rates set forth in any such tariff supplement shall not be deemed Commission made rates" and that the tariff supplement "shall be subject to the aforesaid inquiry and investigation."

Duquesne's proposed Tariff Supplement No. 2 was immediately opposed by, among others, Mark Widoff the Consumer Advocate, the City of Pittsburgh and 25 Private Complainants—the three parties to the instant proceedings in addition to Duquesne. No petitions to review PUC's Order of December 9, 1976 that Duquesne might file a tariff for $60,000,000 increase in annual revenues, were filed. However, some complainants filed applications with the PUC to revoke the order of December 9, 1976.

On December 16, 1976 the PUC assigned the tariff application and associated formal complaints to an Administrative Law Judge who was charged to hold a prehearing conference, to hear Duquesne's proofs in support of its petition for emergency relief and to report his findings, conclusions and opinions no later than February 15, 1977. On March 22, 1977 the Administrative Law Judge reported that in his opinion Duquesne had established its need for the $60,000,000 annual increase in revenues.

By order adopted June 28, 1977, entered July 6, 1977 (hereinafter referred to as the June 28, 1977 or-

der) the PUC directed that effective July 9, 1977 Duquesne should reduce its existing rates to a level to produce $12,000,000 annually more than the rates in effect on June 30, 1976, and that the Administrative Law Judge should take steps "to have information available in the record, and shall determine, the amount of interim rate relief which shall have been collected by Duquesne at the termination of this proceeding."

Duquesne filed a petition for review of the PUC's order of June 28, 1977,[2] which is now before us. The PUC, Mark Widoff the Consumer Advocate, the City of Pittsburgh, and 25 Private Complainants all filed or joined in motions to quash Duquesne's petition for review as being one taken from an interlocutory order.

Duquesne's petition for review galvanized Mark Widoff the Consumer Advocate, the City of Pittsburgh and 25 Private Complainants to file so-called cross-petitions for review of both the order of December 9, 1976 and of the order of June 28, 1977.

The PUC filed a motion to quash these cross-petitions, insofar as they attack the order of December 9, 1976 because the cross-petitions were not filed within 30 days of the entry of the order and insofar as they attack the June 28, 1977 order because that order was interlocutory and therefore not appealable.

Duquesne moved to quash the cross-petitions attacking the December 9, 1976 order on the grounds of

---

[2] Duquesne also requested a stay of the order of June 28, 1977, which we refused. We concluded that the June 28, 1977 order was one fixing temporary rates pursuant to Section 310, 66 P.S. §1150, of the Public Utility Law and that we were forbidden by Section 1111, 66 P.S. §1441, from staying an order of the PUC where jurisdiction was not in question. Our orders in the earlier proceedings are reported at *Duquesne Light Company v. P.U.C.*, 31 Pa. Commonwealth Ct. 118, 375 A.2d 399 (1977), and *Duquesne Light Company v. P.U.C.*, 31 Pa. Commonwealth Ct. 118, 123, 376 A.2d 668 (1977).

the untimeliness of the appeals and for the further reason, as asserted, that the Pennsylvania Rules of Appellate Procedure do not make provision for cross-petitions for review.

We have concluded that both PUC orders were interlocutory, not final, and that Duquesne's petition for review and the cross-petitions for review filed by Mark Widoff the Consumer Advocate, the City of Pittsburgh and the 25 Private Complainants must all be quashed.

By Section 403 of the Appellate Court Jurisdiction Act of 1970,[3] our jurisdiction of appeals from administrative agencies, including the PUC, extends only to appeals from final orders. What makes an order final has been so recently described by the Supreme Court that no additional comment is necessary here. *T.C.R. Realty, Inc. v. Cox*, 472 Pa. 331, 336-337, 372 A.2d 721, 724 (1977). In the case just cited the order sought to be reviewed was held to be final because it precluded the appellant from presenting the merits of his claim in the lower court.

This rate case is still being litigated on its merits before the PUC; no final order with respect to Duquesne's claim for annual revenues of $127,897,362 has been made; and in making that final order the PUC will, as its order of June 28, 1977 expressly declares, consider the fact that from December 14, 1976 until July 9, 1977, Duquesne received increased revenues at an annual rate of $60,000,000, pursuant to the December 9, 1976 order, and that since July 9, 1977, Duquesne has received increased revenues at an annual rate of $12,000,000 pursuant to the order of June 28, 1977. Hence, the cross-petitioners are not precluded from seeking redress with respect to the December 9,

---

[3] Act of July 31, 1970, P.L. 673, *as amended*, 17 P.S. §211.403.

1976 rate allowance and Duquesne is not precluded from presenting its claim for a final order truly reflecting its deprivation of fair revenues during the pendency of the PUC's investigation.

That the December 9, 1976 order, regardless of the basis in law for its issuance, was not intended to finally fix Duquesne's right to a rate allowance pending the investigation is plain on its face. The $60,000,000 rate allowance was to exist only "pending . . . inquiry and investigation" and was declared to "be subject to [an] inquiry and investigation." That it was not a final order is further demonstrated by the fact that by its order of June 28, 1977, the PUC, contrary to the Administrative Law Judge's recommendation, reduced Duquesne's allowance to $12,000,000 on an annual basis.

The cross-petitioners, not having appealed from the December 9, 1976 order, concede that it was interlocutory when made but contend that it became a final order as to Duquesne's customers when the PUC failed to order refunds in its order of June 28, 1977. This argument is wholly without merit. We fail to see how the failure to order refunds of rates collected with PUC approval during the litigation of a rate case, precludes the complainants from asserting that refunds should be directed to be made in the PUC's final order. And of course it does not. *See* Section 313(a) of the Public Utility Law, 66 P.S. §1153(a).

Duquesne contends that if, as we concluded when asked to stay the order, and still hold, the June 28, 1977 order was a temporary rate, it is appealable under the authority of *P.U.C. v. Laurel Pipeline Company*, 23 Pa. Commonwealth Ct. 559, 353 A.2d 84 (1976). In that case the utility specified as error by the PUC in establishing a temporary rate that it was not given notice and an opportunity to be heard and

that the temporary rate order was in effect a suspension beyond the nine month period allowed by Section 308 of the Public Utility Law. We entertained the appeal on the authority of Section 1107, 66 P.S. §1437, which authorized the court on appeal to vacate or set aside a PUC order for error of law. We could well distinguish this case from *Laurel Pipeline Company, supra,* on the ground that the errors of law alleged in the instant case are too generally, and therefore insufficiently, pleaded; or we could note that Section 1107 of the Act, on which our decision in *Laurel Pipeline Company, supra,* was grounded, has been in pertinent part suspended by the Pennsylvania Rules of Appellate Procedure. We believe it wiser to overrule the holding of *Laurel Pipeline Company, supra,* that an appeal asserting errors of law may be taken from an order establishing temporary rates pursuant to Section 310 and to hold to the contrary that such an order is interlocutory and unappealable. In so doing, we conform to existing, however meager, case law on the general subject. *City of Pittsburgh v. P.U.C.,* 178 Pa. Superior Ct. 368, 115 A.2d 858 (1955); *Reed v. P.U.C.,* 174 Pa. Superior Ct. 132, 100 A.2d 399 (1953). This decision would appear not to be of monumental consequence because Section 310 was amended by the Act of October 7, 1976, P.L. 1057, effective October 7, 1977, *inter alia,* to provide that temporary rates may not be established in a proceeding involving a general rate increase. By the same Act a subsection (f) was added to Section 308 permitting utilities proposing increases to petition the PUC for extraordinary rate relief pending the rate case and providing that such extraordinary rates, if allowed, "shall not be deemed to be temporary rates within the meaning of that term as it is used in section 310 of the Act." This, of course, creates the issue, not before us here, of whether the order fixing extraordinary rates is appealable.

## ORDER

AND Now, this 23rd day of February, 1978, it is Ordered that Duquesne Light Company's petition for review at No. 1346 C.D. 1977, Mark Widoff the Consumer Advocate's cross-petition for review at No. 1457 C.D. 1977, the City of Pittsburgh's cross-petition for review at No. 1472 C.D. 1977, and 25 Private Complainant's cross-petition for review at No. 1485 C.D. 1977, be and they all are quashed.