Allegheny Ludlum Steel Corporation, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent. West Penn Power Company, Intervenor.

Freedom Forge Corporation, t/d/b/a Standard Steel, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent. Pennsylvania Electric Company, Intervenor.

Allegheny Ludlum Steel Corporation, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent. West Penn Power Company, Intervenor.

Argued May 4, 1982, before President Judge CRUMLISH and Judges ROGERS, BLATT, CRAIG and MAC-PHAIL.

Stephen A. George, with him Leonard J. Marsico, Buchanan, Ingersoll, Rodewald, Kyle & Buerger, for petitioners.

James P. Melia, Assistant Counsel, with him Daniel P. Delaney, Special Counsel, and Joseph J. Malatesta, Jr., and Charles F. Hoffman, Chief Counsels, for respondent.

Drew J. Kovalak, with him Thomas K. Henderson and John L. Munsch, for intervenor, West Penn Power Company.

Samuel B. Russell, with him Alan Michael Seltzer, Ryan, Russell & McConaghy, for Amici Curiae, Metropolitan Edison Company and Pennsylvania Electric Company.

OPINION BY JUDGE CRAIG, July 13, 1982:

These three consolidated actions involve the central issue of whether Section 1307 of the Public Utility Code,[1] the energy cost rate (ECR) adjustment provision, is unconstitutional on the ground that it fails to afford procedural due process.

---

[1] 66 Pa. C. S. §1307, which provides:

(a) General rule.—Any public utility, except a common carrier, may establish a sliding scale of rates or such other method for the automatic adjustment of the rates of the public utility as shall provide a just and reasonable return on the fair value of the property used and useful in the public service, to be determined upon such equitable or reasonable basis as shall provide such fair return. A tariff

Allegheny Ludlum Steel Corporation (Allegheny Ludlum) initiated these proceedings, addressing our

showing the scale of rates under such arrangement shall first be filed with the commission, and such tariff, and each rate set out therein, approved by it. The commission may revoke its approval at any time and fix other rates for any such public utility if, after notice and hearing, the commission finds the existing rates unjust or unreasonable.

(b) Mandatory system for automatic adjustment.— The commission, by regulation or order, upon reasonable notice and after hearing, may prescribe for any class of public utilities, except a common carrier, a mandatory system for the automatic adjustment of their rates, by means of a sliding scale of rates or other method, on the same basis as provided in subsection (a), to become effective when and in the manner prescribed in such regulation or order. Every such public utility shall, within such time as shall be prescribed by the commission, file tariffs showing the rates established in accordance with such regulation or order.

(c) Fuel cost adjustment.—In any method automatically adjusting rates to reflect changes in fossil fuel cost under this section, the fuel cost used in computing the adjustment shall be limited, in the case of an electric utility, to the cost of such fuel delivered to the utility at the generating site at which it is to be consumed, and the cost of disposing of solid waste from scrubbers or other devices designated so that the consumption of Pennsylvania-mined coal at the generating site would comply with the sulfur oxide emission standards prescribed by the Commonwealth. The cost of fuel handling after such delivery, or of waste disposal, other than as prescribed in this section, shall be excluded from such computation. In any method automatically adjusting rates to reflect changes in fuel cost other than fossil fuel cost under this section, the fuel cost used in computing the adjustment shall be limited, in the case of an electric utility, to the cost of such fuel delivered to the utility at the generating site at which it is to be consumed after deducting therefrom the present salvate or reuse value of such fuel, as shall be established by commission rule or order.

(d) Fuel cost adjustment audits.—The commission shall conduct or cause to be conducted, at such times as it

original jurisdiction by filing a petition for review in the nature of a complaint for a declaratory judgment

may order, but at least annually, an audit of each public utility which, by any method described in this section, automatically adjusts its rates to reflect changes in its fuel costs, which audit shall enable the commission to determine the propriety and correctness of amounts billed and collected under this section. Whoever performs the audit shall be a person knowledgeable in the subject matter encompassed within the operation of the automatic adjustment clause. The auditors report shall be in a form and manner directed by the commission.

(e) Automatic adjustment reports and proceedings.—

(1) Within 30 days following the end of such 12-month period as the commission shall designate, each public utility using an automatic adjustment clause shall file with the commission a statement which shall specify for such period:

(i) the total revenues received pursuant to the automatic adjustment clause;

(ii) the total amount of that expense or class of expenses incurred which is the basis of the automatic adjustment clause; and

(iii) the difference between the amounts specified by subparagraphs (i) and (ii).

Such report shall be a matter of public record and copies thereof shall be made available to any person upon request to the commission.

(2) Within 60 days following the submission of such report by a public utility, the commission shall hold a public hearing on the substance of the report and any matters pertaining to the use by such public utility of such automatic adjustment clause in the preceding period and may include the present and subsequent periods.

(3) Absent good reason being shown to the contrary, the commission shall, within 60 days following such hearing, by order direct each such public utility to, over an appropriate 12-month period, refund to its patrons an amount equal to that by which its revenues received pursuant to such automatic adjustment clause exceeded the amount of such expense or class of expenses, or recover from its patrons an amount equal to that by which such expense or class of expenses exceeded the revenues received pursuant to such automatic adjustment clause.

that Section 1307 is unconstitutional.[2] The Public Utility Commission (PUC) is a respondent and West Penn Power Company (West Penn) is an intervening respondent. Metropolitan Edison Company has filed a brief amicus curiae.

Allegheny Ludlum also filed a precautionary appeal in the event that the matter should be regarded as calling for an appeal from an administrative agency order.[3]

In addition, we here have a precautionary appeal taken by Freedom Forge Corporation (Freedom Forge) from PUC action, which is identical to that taken by Allegheny Ludlum.[4] In that appeal, the PUC is respondent and Pennsylvania Electric Company (Penn Electric) is an intervening respondent.

The history of these actions began on November 20, 1981, when West Penn and Penn Electric (utility companies) proposed to the PUC that they be allowed to

---

(4) For the purpose of this subsection, where a 12-month report period and 12-month refund or recovery period shall have been previously established or designated, nothing in this section shall impair the continued use of such previously established or designated periods nor shall anything in this section prevent the commission from amending at any time any method used by any utility in automatically adjusting its rates, so as to provide the commission more adequate supervision of the administration by a utility of such method and to decrease the likelihood of collection by a utility, in subsequent periods, of amounts greater or less than that to which it is entitled, or, in the event that such deficiency or surplus in collected amounts is found, more prompt readjustment thereof.

[2] No. 3159 C.D. 1981.

[3] No. 257 C.D. 1982.

[4] No. 242 C.D. 1982. Freedom Forge also filed a petition for review in the nature of complaint for a declaratory judgment identical to that of Allegheny Ludlum. However, that case, No. 243 C.D. 1982, is not before us.

increase the ECR component of their rates[5] under the provisions of Section 1307, for bills rendered between December 29, 1981 and December 31, 1982. Allegheny Ludlum and Freedom Forge, upon learning of the proposed increase,[6] filed complaints and petitions for suspension against the utility companies with the PUC.

On December 18, 1981, the PUC, in accordance with its normal procedures, met to deliberate the proposed ECR increases and adopted a motion allowing the utility companies to increase their ECR. Although the meeting was open to the public, neither the public nor Allegheny Ludlum and Freedom Forge were allowed

[5] The ECR is an automatic adjustment clause that enables utilities to project future fossil fuel and ancillary costs for a defined period of a calendar year and collect rates based on these projections. The ECR is calculated by dividing (1) the estimated energy cost in excess of those recovered base rates for a yearly billing period, adjusted by a correction factor (Ec) based on the prior year's collection experience, by (2) the projected total kilowatt-hours sales to retail customers, to produce a mills per kilowatt-hour figure representing the increase or decrease from the base rate for such energy that the utility has to bear during the billing year. That mills per kilowatt-hour figure is then applied to the number of kilowatt hours used by the customer in the billing year to determine how much in addition to the base rate the customer must pay each month for electricity used by him. Over collections and undercollections of such energy costs are determined monthly and are reconciled annually for the twelve months. Any other undercollections are recovered from customers in the subsequent billing year without liability for interest. Any overcollections are refunded to customers through operation of the ECR with interest. The interest rate is computed monthly in accordance with the variable rate set forth in Section 1308(d) of the Public Utility Code, 66 Pa. C. S. §1308(d) (voluntary changes in rates), an average, for example, being 14.73% for the twelve months ending October 31, 1981.

[6] West Penn Power Company's 1982 ECR imposes an increase of 75,145,299.28 or $200,959.00 per day on its customers based on projected sales in 1982 of 14,348,921 megawatt-hours of electricity to its retail customers. This ECR increases Allegheny Ludlum Steel Corporation's annual electric bill about 20% or from $3.5 million to $4.5 million per year, or approximately between $9,000 to $10,000 per day at current levels of consumption.

to address the PUC. Then, on January 4, 1982, the PUC issued a letter informing Allegheny Ludlum and Freedom Forge that initial proceedings approving the 1982 ECR proposals had been terminated and noting that their complaints before the PUC remained outstanding.[7]

Earlier, on December 23, 1981, Allegheny Ludlum had filed its original jurisdiction action against the PUC with this court, accompanied by an application for stay of the PUC's action of December 18, 1981, approving West Penn's ECR. In response, the PUC has filed—and West Penn has adopted—preliminary objections which include the contention that declaratory relief was improper because Allegheny Ludlum's action was actually an appeal from a final determination of the PUC "in the guise of a petition for declaratory relief." Thereafter, Allegheny Ludlum and Freedom Forge filed their precautionary appeals, to which the PUC and the respective utility companies have responded by filing their motions to quash.

On January 20, 1982, this court granted Allegheny Ludlum's stay request and on February 18, 1982, our Supreme Court assumed plenary jurisdiction of these proceedings, vacated the stay granted by this court and gave instructions to consider and dispose of the preliminary objections, as well as to conduct an expedited hearing on the merits.[8]

---

[7] The PUC has initiated hearings on petitioners' complaints commencing with a pre-hearing conference that was held on March 4, 1982. At that pre-hearing, the Administrative Law Judge agreed to adjudicate the issues involving the 1982 ECR with those arising from West Penn Power Company's proposed rate increase of $93.9 million, filed on February 26, 1982.

[8] The Supreme Court order of February 18, 1982 stated:

Application for Assumption of Plenary Jurisdiction is granted. The Stay of the Commonwealth Court is vacated and the case is remanded to Commonwealth Court for expedited hearing on the merits.

With respect thereto, the parties have filed a stipulation of the facts, which we hereby adopt as our findings of fact herein.

### The Appeals

We will first consider the precautionary appeals filed by Allegheny Ludlum and Freedom Forge, which assert that the letter of January 4, 1982, informing them that the temporary rates had been approved, was a final order.

Our Supreme Court has said:

It is fundamental law in the Commonwealth that an appeal will lie only from final orders, unless otherwise expressly permitted by statute. . . . In ascertaining what is a "final order," we have looked beyond the technical effect of the adjudication to its practical ramifications. . . . We have variously defined a final order as one which ends the litigation, or alternatively disposes of the entire case. . . . Conversely phrased, an order is interlocutory and not final unless it effectively puts the litigant "out of court." (Citations omitted.)

*T.C.R. Realty, Inc. v. Cox*, 472 Pa. 331, 337, 372 A.2d 721, 724 (1977). Relying on this definition, we held in *Duquesne Light Co. v. Pennsylvania Public Utility Commission*, 34 Pa. Commonwealth Ct. 50, 382 A.2d 991 (1978), that an order fixing temporary utility rates is interlocutory and unappealable.[9] Because the terms of Section 1307(e) provide for review of the

---

On March 10, 1982, this court issued an order that construed the Supreme Court order as treating the preliminary objections as overruled. However, on April 7, 1982, the Supreme Court vacated our order and directed us "to consider and dispose of the merits of the preliminary objections."

[9] *See Widoff v. Pennsylvania Public Utility Commission*, 42 Pa. Commonwealth Ct. 216, 400 A.2d 676 (1979), where we held that a PUC order establishing a rate increase as a temporary settlement

ECR adjustment pursuant to public hearing, with provision for refunds to consumers in the event of downward revisions, the ECR scheme is genuinely analogous to temporary rates. We therefore grant the motions to quash.

## The Original Jurisdiction Case

Next, in considering the original jurisdiction matter before us, we can summarize the respondents' preliminary objections as follows: (1) jurisdiction for declaratory relief is unavailable because (a) the matter involves a disguised appeal from an order of the PUC;[10] and (b) this matter is within the exclusive jurisdiction of the PUC; (2) Allegheny Ludlum has failed to exhaust those administrative remedies available to it; and (3) Section 1307(e)(2) provides adequate due process safeguards to protect Allegheny Ludlum until final adjudication of the ECR proposal.

Respondents' first preliminary objection category involves Section 7541(c) of the new Declaratory Judgment Act (D.J.A.),[11] which provides that declaratory relief shall not be available with respect to any:

(2)    Proceeding within the exclusive jurisdiction of a tribunal other than a court.

(3)    Proceeding involving an appeal from an order of a tribunal.

Concerning the claim regarding Section 7541(c)(3), Allegheny Ludlum's petition does not address the merits of the decision reached by the PUC regarding

constituted an interlocutory and unappealable order where an intra-agency appeal could be taken with the possibility of obtaining a refund, if successful.

[10] The respondents claim that Allegheny Ludlum is, in part, appealing the PUC letter dated December 18, 1981, approving West Penn's ECR proposal.

[11] 42 Pa. C. S. §§7531-7541.

the ECR increase; rather, Allegheny Ludlum challenges the *process* whereby ECR increases can occur without public participation. Thus, Allegheny Ludlum's petition cannot be classified as an appeal from the order.

Furthermore, we cannot accede to that aspect of the respondents' preliminary objections which urge us to dispose of the petition on the basis that the dispute remains within the exclusive jurisdiction of an administrative tribunal, the PUC. Declaratory judgment is the proper procedure to determine whether a statute violates the constitutional rights of those whom the statute affects. *Snider v. Shapp*, 45 Pa. Commonwealth Ct. 337, 405 A.2d 602 (1979). "[W]hile statutory remedies are not rendered inappropriate merely because a constitutional issue is raised, an administrative agency cannot determine the constitutionality of its own enabling legislation." *Myers v. Department of Revenue*, 55 Pa. Commonwealth Ct. 509, 515, 423 A.2d 1101, 1104 (1980). The rationale behind this doctrine was explained by our Supreme Court in *Borough of Green Tree v. Board of Property Assessment*, 459 Pa. 268, 281, 328 A.2d 819, 825 (1974):

> The more clearly it appears that the question raised goes directly to the validity of the statute the less need exists for the agency involved to throw light on the issue through exercise of its specialized fact-finding function or application of its administrative expertise. Further, the less need there is for compliance with an agency's procedures as a prerequisite to informed constitutional decision making, then correspondingly greater is the embarrassment caused to litigants by requiring conformity with the statutorily-prescribed remedy.

Moreover, the D.J.A., which has substantially broadened the availability of declaratory relief, *see*

*Myers v. Department of Revenue,* 55 Pa. Common-
wealth Ct. 509, 423 A.2d 1101, (1980), provides that,
although a court continues to have discretion to refuse
declaratory relief if the controversy or uncertainty at
issue would not thereby be resolved, "the existence of
an alternative remedy *shall not be a ground* for the
refusal to proceed under [the D.J.A.]." (Emphasis
added.)[12] Thus, the respondents' second set of pre-
liminary objections, regarding the necessity to exhaust
administrative remedies, are without merit.[13]

The remaining aspect of the preliminary objections
are the demurrers, which go to the legal merits of the
original jurisdiction action, *i.e.,* the constitutional suf-
ficiency of Section 1307 of the Public Utility Code as a
matter of procedural due process. We are able to con-
sider the issues raised in the demurrers and the merits
of the action together because the parties have pro-
vided us with a stipulation of the facts, in lieu of con-
ducting a hearing.

Our court has recognized the need for utility com-
panies to increase rates subject to future review as
long as the consumer is adequately protected:

> It is well-settled that the PUC without notice or
> hearing may permit rates to become effective or
> suspend them pending decision concerning their
> lawfulness. Baker v. Pennsylvania Public Util-
> ity Commission, 14 Pa. Commonwealth Ct. 245,

---

[12] 42 Pa. C. S. §7537.

[13] The respondents' reliance on the standards expressed in *Mid-
Centre County Authority v. Township of Boggs,* 34 Pa. Common-
wealth Ct. 494, 384 A.2d 1008 (1978), is misplaced because that case
involved the former Uniform Declaratory Judgments Act, Act of
June 18, 1923, P.L. 840, *as amended,* 12 P.S. §831 *et seq.* repealed by
Section 2(a) of the Judiciary Act Repealer Act, Act of April 28,
1978, P.L. 202, 42 P.S. §20002(c). The new Declaratory Judgments
Act "has substantially broadened the availability of declaratory
relief. . . ." *Myers v. Department of Revenue,* 55 Pa. Commonwealth
Ct. 509, 513, 423 A.2d 1101, 1103 (1980).

322 A.2d 735 (1974). The reason that no hearing is required on the initial question of the suspension is that the failure to suspend does not amount to commission approval and refunds are available if the increase is later held to be unjustified. (Citation omitted.) Of course, if the rates are suspended, the consumer does not have to pay them. Thus, in either case the rights of the consumers are protected.

*City of Pittsburgh v. Public Utility Commission*, 55 Pa. Commonwealth Ct. 177, 184-85, 423 A.2d 454, 457 (1980).

Nevertheless, Allegheny Ludlum contends that two decisions of our Supreme Court, *Conestoga National Bank of Lancaster v. Patterson*, 442 Pa. 289, 275 A.2d 6 (1971) and *Pennsylvania Coal Mining Association v. Insurance Department*, 471 Pa. 437, 370 A.2d 685 (1977), when read together, establish that the absence of advance notice, lack of access to supplemental data, and negation of an opportunity to present objections to an administrative agency in a meaningful manner for a subsequent determination on the record, are constitutional defects which nullify agency action in the nature of that which is here at issue.

In *Conestoga*, our Supreme Court, in an opinion by Mr. Justice ROBERTS, ruling that the approval by the Department of Banking of an application for the establishment of a branch bank is a judicial determination involving substantial property rights in relation to protesting banks, also said:

Procedural due process does not require notice and a hearing in every conceivable situation involving administrative action. (Citation omitted.) However, these procedural safeguards should accompany a situation where the administrative action is adjudicatory in nature and involves substantial property rights.

*Id.* at 296, 275 A.2d at 9. We conclude that the rate increases in the present case, on the order of $10,000 per day, do involve substantial property rights,[14] and that Allegheny Ludlum here is entitled to procedural due process elements like those offered in *Conestoga.* However, unlike the process attacked in *Conestoga,* which did not provide those due process elements *at any juncture,* here the process affords those elements in a *subsequent* proceeding.

In *Pennsylvania Coal,* our Supreme Court, again in an opinion written by Mr. Justice ROBERTS, did consider whether temporary rates imposed by an administrative agency may validly become effective pending a subsequent public determination — specifically, whether procedural due process was satisfied where a private organization, the Coal Mine Compensation Rating Bureau of Pennsylvania, could increase insurance rates for mining companies' black lung coverage without providing a prior hearing or notice to the insurance carriers. Significantly, the rate increase, although ostensibly subject to public regulatory review, was deemed automatic if the insurance commissioner did not act on the proposal within thirty days.

The court said:

> We do not believe, however, that due process requires that the Association receive a full hearing before rates can become effective. While oral proceedings may be necessary for determi-

---

[14] The PUC seeks to distinguish *Conestoga* by relying on the court's language indicating that the banking system is unique "in that the failure of one of several competing institutions frequently leads not to the enhancement of the relative position of the surviving competitors but to possible adverse effects to all." 442 Pa. at 298, 275 A.2d at 11. However, that discussion of the banking community's unique situation was related to the issue of whether substantial property rights were involved in the proceeding. In the present case, Allegheny Ludlum's large rate increases certainly involve a substantial property interest.

nations likely to turn on witness credibility, written submissions may be adequate when economic or statistical questions are at issue. See Mathews v. Eldridge, 424 U.S. 319, 342, 96 S.Ct. 893, 907, 47 L.Ed. 2d 18 (1976); Friendly, Some Kind of a Hearing, 123 U. Pa. L. Rev. 1267, 1281-85 (1975). Moreover, unlike the opportunity to present written objections, a full hearing would entail extended delay, during which time the insurance carriers may be deprived of their interest in receiving adequate premiums. The opportunity to recover any excessive rates paid, after proceedings pursuant to 40 P.S. §814 (Supp. 1976), in addition to notice and an opportunity to present written objections before the rates become effective, satisfies procedural due process. Cf. Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed. 2d 18 (1976) (existing procedures, which include notice and an opportunity to present written objections before termination, and a full hearing after termination, adequately protect an individual's interest in disability benefits). . . .

*Id.* at 454-55, 370 A.2d at 693-694. In the present case, Allegheny Ludlum also has the opportunity to recover refunds with interest if the rate increase is found to be unreasonable.[15]

---

[15] Section 313(a) of the Public Utility Code, 66 Pa. C. S. §1312(a), provides in pertinent part as follows:

If, in any proceeding involving rates, the commission shall determine that any rate received by a public utility was unjust or unreasonable, or was in violation of any regulation or order of the commission, or was in excess of the applicable rate contained in an existing and effective tariff of such public utility, the commission shall have the power and authority to make an order requiring the public utility to refund the amount of any excess paid by any patron, in consequence of such unlawful collection, within two years

In *Pennsylvania Coal,* the Supreme Court's final conclusion was that the minimum amount of procedural due process protection due the coal mining companies included, in addition to notice that proposed rates had been filed and would be deemed to be in effect unless action were taken by the Insurance Commissioner before a certain date, a provision that any interested person may present written objections to the proposed rates *before* they went into effect. However, the court further noted:

> Thus, procedural protection should be given *before* the government takes action which threatens to deprive a citizen of an interest, *unless important governmental interests, or the preservation of the interests of others, requires otherwise.* (Emphasis added.)

*Id.* at 451, 370 A.2d at 692. Important concerns as to both governmental interests and the preservation of the interests of others are present here. In *City of Pittsburgh,* 55 Pa. Commonwealth Ct. at 183, 423 A.2d at 456, we recognized the important interests involved in expediting certain rate increases:

> [A]lthough the PUC must not ignore the customer's rights, it also has a duty to consider other factors protecting the right of a public

_____

prior to the date of the filing of the complaint, together with interest at the legal rate from the date of each such excessive payment. In making a determination under this section, the commission need not find that the rate complained of was extortionate or oppressive. Any order of the commission awarding a refund shall be made for on behalf of all patrons subject to the same rate of the public utility. The commission shall state in any refund order the exact amount to be paid, the reasonable time within which payment shall be made, and shall make findings upon pertinent questions of fact.

When this Section was codified by Section 1 of the Act of July 1, 1978, P.L. 598, 66 Pa. C. S. §1312(a), the time limitation for refunds was increased from two years to four years.

utility to receive a fair return on its investment.[16]

Moreover, the Supreme Court in *Pennsylvania Coal* was concerned that the Insurance Commissioner, by *not* acting within thirty days, effectively could approve the proposed increases without substantive consideration. The court emphasized the distinction between private party review and public agency review:

Where proposals by a private party must be reviewed and approved by a regulatory agency before they become effective, there is no unconstitutional delegation. The possibility of an arbitrary disregard of individual interests when the recommendations of a private body are deemed into effect without the specific approval of a public official, however, demands greater procedural protection than due process might otherwise require.

*Id.* at 451, 370 A.2d at 692. Thus the court felt that the opportunity to present written objections was "necessary to enable them to present to the Insurance Commissioner any reasons why rate increases should not be allowed, or why hearings should be held before rates became effective." *Id.* at 453-454, 370 A.2d 693.

However, in the present case, the PUC is given limited discretion in determining ECR increases because Section 1307(c) explicitly describes the factors the PUC is to consider to an ECR application.

Therefore, we conclude that Section 1307 meets the procedural due process standards established by our Supreme Court decisions in *Conestoga* and *Pennsylvania Coal*, recognizing the often conflicting interests in-

---

[16] *See City of Erie v. Pennsylvania Electric Co.*, 34 Pa. Commonwealth Ct. 326, 330, 383 A.2d 575, 577 (1978) where we said that "[a] public utility is clearly entitled to a fair rate of return on its investment, as determined by the PUC's consideration of many factors, including the cost of operating its facility. . . ."

volved in ratemaking policy, because Allegheny Ludlum will be entitled to an adjudication at the end of one year, at which point it can recover any excessive rates paid, computed with interest. Furthermore, Allegheny Ludlum has the benefit of reasonable protection in the interim because the proposed rates are subject to review by a governmental body (PUC), which is restricted by specific guidelines as to which factors can be considered in ascertaining an ECR proposal.

Accordingly, the demurrers in respondents' preliminary objections are sustained, and the original jurisdiction action is dismissed.

ORDER IN 3519 C.D. 1981

Now, July 13, 1982, Preliminary Objections Nos. 1-10, inclusive, of the Pennsylvania Public Utility Commission (PUC), as adopted by West Penn Power Company, intervenor, are overruled; Preliminary Objections Nos. 11-15, inclusive, are sustained; and this action is hereby dismissed.

ORDER IN 242 C.D. AND 257 C.D. 1982

Now, July 13, 1982, the motions to quash filed by the Public Utility Commission, West Penn Power Company and Pennsylvania Electric Company are hereby granted.