Joseph Horne Company, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent. Duquesne Light Company et al., Intervenors.

Joseph Horne Company, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

Argued September 18, 1981, before Judges ROGERS, WILLIAMS, JR. and PALLADINO, sitting as a panel of three.

*E. J. Strassburger*, with him, *Dennis S. Shilobod, Strassburger, McKenna, Messer, Shilobod & Gutnick,* for petitioner.

*Joseph J. Malatesta, Jr.*, Chief Counsel, for respondent.

*Charles E. Thomas*, with him, *Charles E. Thomas, Jr.,* and *Patricia Armstrong, Thomas & Thomas,* for intervenors.

OPINION BY JUDGE ROGERS, November 13, 1981:

We have consolidated for argument and disposition the Motions to Quash of the Pennsylvania Public Utility Commission and the Duquesne Light Company in two appeals of Joseph Horne Company challenging separate orders of the Commission.

The orders challenged by Horne have the effect of increasing the annual revenues of Duquesne by approximately $64 million subject to the possibility that refunds might be required following an investigation and a series of public hearings now being conducted by the Commission. Horne is a customer of Duquesne and will have to pay more for its electric service if the increased rates are ultimately approved.

Specifically, on April 30, 1981, Duquesne filed Supplement No. 49 to its electric tariff No. 14 which supplement proposed rate changes calculated to increase annual revenues by over $100 million. The Commission instituted an investigation to determine

the reasonableness of the proposed increase and further ordered on June 29, 1981:

That if, on or before July 15, 1981, the respondent files a tariff or tariff supplement, effective upon fifteen days notice to the Commission, which cancels and supercedes Supplement No. 49 and which contain proposed changes in rates calculated to produce additional annual revenues of not more than $64,237,000 . . . , then upon approval by the Commission, the tariff or tariff supplement proposing the lesser rate increase shall be permitted to become effective, subject to the investigation opened by this Order, and subject to refunds. Any formal complaints filed against the proposed changes in rates, rules and regulations contained in Supplement No. 49, if not withdrawn, will be deemed filed against the tariff or tariff supplement proposing the lesser increase.

In its order the Commission also noted that:

This does not constitute a determination of the lawful, just and reasonable rates to be charged by respondent or of the reasonableness of any of respondent's claims or adjustments to respondent's claims. Rather, this is a determination that suspension of the lesser increase is not warranted at this time. However, formal investigation of respondent's existing and proposed rates, rules and regulations is necessary in order to fully protect the public interest . . . .

At No. 1730 C.D. 1981 Horne appeals from the June 29, 1981 order. On July 1, 1981, Duquesne filed Supplement No. 52 which was designed to supercede Supplement No. 49 and to provide for an increase in revenues of approximately $64 million. The Commission accepted Supplement No. 52 at its July 17, 1981, public meeting. Horne appeals from this action of the Commission at No. 1782 C.D. 1981.

Duquesne and the Commission argue that the orders from which Horne has appealed are interlocutory and, hence, unappealable. We agree. In *Widoff v. Pennsylvania Public Utility Commission,* 42 Pa. Commonwealth Ct. 216, 400 A.2d 676 (1979) we summarized the applicable legal principles as follows:

Our Supreme Court has had this to say about interlocutory orders:

It is fundamental law in this Commonwealth that an appeal will lie only from final orders, unless otherwise expressly permitted by statute. . . . In ascertaining what is a 'final order,' we have looked beyond the technical effect of the adjudication to its practical ramifications. . . . We have variously defined a final order as one which ends the litigation, or alternatively disposes of the entire case. . . . Conversely phrased, an order is interlocutory and not final unless it effectively puts the litigant out of court.' T. C. R. Realty, Inc. v. Cox, 472 Pa. 331, 337, 372 A.2d 721, 724 (1977) (citations omitted).

*Id.* at 219-220, 400 A.2d at 677. We then granted the Motions to Quash at issue in *Widoff* and held to be interlocutory an order of the Commission which

"clearly provided for the continuation of hearings on the [petitioner's] complaint [and] . . . provides that if, at the conclusion of the [petitioner's] case, the settlement rates prove to be excessive, the PUC will order a refund at this time."

*Id.* at 220, 400 A.2d at 677. *See also Duquesne Light Company v. Pennsylvania Public Utility Commission,* 34 Pa. Commonwealth Ct. 50, 382 A.2d 991 (1978).

The same considerations govern the case at bar. Horne's challenge to Duquesne's rate increase was expressly preserved by the Commission's June 29, 1981, Order. A refund will be available to Horne if

the rates contained in Supplement No. 52 are found to be excessive. There is no sense in which Horne has been placed "out of court" by the Commission's action. Moreover, the Commission's June 29, 1981, Order had the single effect of suspending the rates proposed in Supplement No. 49; an effect of which Horne does not complain.

For its part Horne relies primarily on the decision of our Supreme Court in *Pennsylvania Coal Mining Association v. Insurance Department*, 471 Pa. 437, 370 A.2d 685 (1977) where a statutory procedure by which black lung insurance rates were deemed to be effective without notice to objecting ratepayers was held violative of the protections of procedural due process. This case is clearly not germane. The order reviewed in *Pennsylvania Coal Mining Association* was not interlocutory and none of the parties contended that it was.

The appeals are quashed.

ORDER

AND Now, this 13th day of November, 1981, the appeals of Joseph Horne Company are quashed.