Joseph Horne Company, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

Argued October 4, 1983, before President Judge CRUMLISH, JR. and Judges CRAIG, MACPHAIL, DOYLE and BARRY.

*E. J. Strassburger,* with him *Dennis S. Shilobod, Strassburger, McKenna, Messer, Shilobod & Gutnick,* for petitioner.

*Gary D. Cohen,* Assistant Counsel, with him *Albert W. Johnson, III,* Deputy Chief Counsel, and *Charles F. Hoffman,* Chief Counsel, for respondent.

*Charles E. Thomas,* with him *Charles E. Thomas, Jr.,* and *Patricia Armstrong,* of counsel: *Thomas & Thomas,* for intervenor, Duquesne Light Company.

Opinion by Judge Craig, November 29, 1983:

Joseph Horne Co., a ratepayer of Duquesne Light Co., appeals from an order of the Pennsylvania Public Utility Commission, which granted Duquesne, a regulated utility, a rate increase of $64 million. We must determine whether the option order procedure, which the PUC employed here, violates either the Pennsylvania Public Utility Code, 66 Pa. C. S. §§101-3315, or the due process clause of the United States or Pennsylvania Constitution.

The utility originally filed Tariff Supplement No. 49 with the PUC, requesting a general rate increase in excess of $100 million. The PUC entered an order which suspended the effectiveness of the supplement pending investigation and offered the utility the option of withdrawing Supplement No. 49 and filing a new supplement requesting no more than $64,237,000. The order further provided that, if the utility filed the second supplement, the PUC would permit the lesser increase to become effective immediately, subject to investigation and possible refund.[1] The order also provided that any complaints filed against Supplement No. 49 would be deemed filed against the second supplement.

---

[1] The PUC's June 29, 1981 order provides, in relevant part: That if, on or before July 15, 1981, the respondent files a tariff supplement, effective upon fifteen days notice to the Commission, which cancels and supersedes Supplement No. 49 and which contains proposed changes in rates calculated to produce additional annual revenues of not more than $64,237,000 and allocates the increase equally among the various rate classes, except for residential water heating, which will receive an increase of approximately 120% of system average percentage increase, then upon approval by the Commission, the tariff or tariff supplement proposing the lesser rate increase shall be permitted to become effective, subject to the investigation opened by this

Electing to exercise its option, the utility filed Tariff Supplement No. 52 requesting an increase of $64,192,105 which the PUC accepted according to the provisions of its earlier order. Following investigation, the PUC found the rates proposed in Supplement No. 52 were just and reasonable and entered an order giving final approval to those rates.[2]

### 1. The Public Utility Code

Horne contends that the PUC's option order procedure violated the Public Utility Code by improperly establishing a temporary rate. The Code provides, Horne argues, only three types of rate changes: (1) a general rate increase, 66 Pa. C. S. §1308(d), (2) extraordinary rate relief, 66 Pa. C. S. §1308(e), and (3) a temporary rate increase, 66 Pa. C. S. §1310. Because the PUC's procedure did not fully comply with the requirements of any of those three alternatives, Horne contends that the procedure was an invalid attempt to effect a temporary rate increase.

Horne's approach overlooks the plain language of 66 Pa. C. S. §1308(d), which provides that whenever a utility files a tariff supplement for a general rate increase, the PUC may "at any time by vote of a majority of the members of the commission . . ., permit such tariff to become effective" pending investigation and final action on the proposed increase.

---

Order, and subject to refunds. Any formal complaints filed against the proposed changes in rates, rules and regulations contained in Supplement No. 49, if not withdrawn, will be deemed filed against the tariff or tariff supplement proposing the lesser increase.

[2] Horne has previously appealed both the June 29 order and the July 17 order which accepted Supplement No. 52. This court quashed both appeals as interlocutory. *Joseph Horne Co. v. Pennsylvania Public Utility Commission*, 62 Pa. Commonwealth Ct. 362, 436 A.2d 1073 (1981).

Thus the option order simply amounted to advice from the PUC that, if the utility filed a lower general rate increase request, the PUC would permit it to become effective without suspension.

Our cases have established that a voluntarily filed general rate increase which the PUC permits to become effective is not a temporary rate. *Pennsylvania Public Utility Commission v. Commonwealth,* 23 Pa. Commonwealth Ct. 566, 353 A.2d 887 (1976); *Baker v. Pennsylvania Public Utility Commission,* 14 Pa. Commonwealth Ct. 245, 322 A.2d 735 (1974). Although the former Public Utility Law, Act of May 28, 1937, P.L. 1053, *as amended,* 66 P.S. §§1101-1562, governed those cases, the subsequent amendments and consolidation of the Code do not require a different result here.

We therefore conclude that the PUC clearly had statutory authority, from §1308(d), to permit the tariff supplement to become effective immediately and that the option order procedure did not render that action an invalid attempt to establish a temporary rate.

Horne also contends that the PUC exceeded its statutory authority by first suspending the utility's supplement and later allowing it to become effective. We need not consider the merits of that contention because there is no support in the record for Horne's factual premise.

The PUC did not initially suspend and then lift the suspension of the same supplement, nor did it amend the first supplement. Rather, the PUC suspended Supplement No. 49; when the utility elected to file Supplement No. 52, it also voluntarily withdrew No. 49, and the PUC then voted to permit the second supplement, No. 52, to become effective pending investigation.

## 2. Due Process

The due process clauses of both the federal and state constitutions, Horne contends, require that the PUC afford notice and an opportunity to object to those affected by its decision before it allows a tariff supplement to become effective. Because the option order procedure which the PUC used here did not provide those procedural safeguards before the supplement's effectiveness, Horne contends it is constitutionally invalid.

As this court concluded in *Allegheny Ludlum Steel Corp. v. Pennsylvania Public Utility Commission,* 67 Pa. Commonwealth Ct. 400, 447 A.2d 675 (1982), *affm'd* Pa. , 459 A.2d 1218 (1983), utility rate increases of the magnitude involved in this case do involve substantial property rights; therefore, the protections of the due process clause are applicable.

However, due process is not an inflexible, dogmatic doctrine; different situations require different procedural safeguards. The PUC's option order process was also the subject of a due process challenge in *Pennsylvania Retailers' Associations v. Pennsylvania Public Utility Commission,* 64 Pa. Commonwealth Ct. 491, 440 A.2d 1267 (1982), where we rejected the contention that the option order process impermissibly shifted the burden of proof from the utility to the complainants. As we observed there, " 'it is well settled that the PUC without notice or hearing may permit rates to become effective or suspend them pending decision concerning their lawfulness' City of Pittsburgh v. Pennsylvania Public Utility Commission, 55 Pa. Commonwealth Ct. 177, 184, 423 A.2d 454, 457 (1980)." 64 Pa .Commonwealth Ct. at 502, 440 A.2d at 1272.

We cannot agree with Horne's contention that *Pennsylvania Coal Mining Association v. Insurance*

*Department,* 471 Pa. 437, 370 A.2d 685 (1977), requires a different conclusion. In that case the Supreme Court found that, because of the particular fact situation, procedural protections afforded after the effectiveness of the contested insurance rates were inadequate for due process.

Central to the court's concern was the statutory scheme which permitted insurance rates suggested by a private organization to become effective without review by a regulatory agency. The court explained "the possibility of an arbitrary disregard of individual interests when the recommendations of a private body are deemed into effect without the specific approval of a public official, however, demands greater procedural protection than due process might otherwise require." 471 Pa. at 451, 370 A.2d at 692. In the present case no such statutory scheme exists; the PUC, by majority vote, determined that the supplement should become effective pending investigation.

Although, as we observed in *Pennsylvania Retailers',* 64 Pa. Commonwealth Ct. 491, 440 A.2d 1267 (1982), procedures which afford due process before the contested action are clearly preferable, there are situations where procedural safeguards provided after the fact adequately protect due process rights. We view the present case as closely analogous to *Allegheny Ludlum,* cited above, where we concluded that the important interests served by permitting the supplement to become effective, and the procedural protections afforded after that effectiveness, justified the PUC's procedure.

The PUC here protected the interests of ratepayers by requiring the utility to bear the burden of proving the reasonableness of the increase request, deeming all complaints filed against Supplement No.

49 also to be filed against Supplement No. 52, providing the potential for refunds if the supplement was not finally approved, and holding extensive investigative hearings, in which ratepayers participated, before final approval of the supplement. Moreover, the PUC also satisfied its duty to protect the right of the utility to a fair return on its investment.[3] We cannot agree that the PUC's approach to balancing those conflicting interests through the option order process resulted in a denial of due process.

Accordingly, we affirm.

ORDER

Now, November 29, 1983, the order of the Pennsylvania Public Utility Commission, entered April 19, 1982, is affirmed.

---

[3] See Allegheny Ludlum Steel Corp. v. Pennsylvania Public Utility Commission, 67 Pa. Commonwealth Ct. 400, 447 A.2d 675 (1982), aff'd. Pa. , 459 A.2d 1218 (1983) ; City of Erie, Pennsylvania v. Pennsylvania Electric Co., 34 Pa. Commonwealth Ct. 326, 383 A.2d 575 (1978).