Pennsylvania Gas and Water Company, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

Argued September 15, 1983, before Judges MAC-PHAIL, DOYLE and BARBIERI, sitting as a panel of three.

*D. Mark Thomas,* with him *Charles E. Thomas* and *Patricia Armstrong,* for petitioner.

*John A. Levin,* Assistant Counsel, with him *Albert W. Johnson,* Deputy Chief Counsel, and *Charles F. Hoffman,* Chief Counsel, for respondent.

*H. Kay Dailey,* Assistant Consumer Advocate, with her *David M. Barasch,* Acting Consumer Advocate, for intervenor, Office of Consumer Advocate.

OPINION BY JUDGE MACPHAIL, January 9, 1984:

Pennsylvania Gas and Water Company (PG&W) has petitioned for review of the order of the Pennsylvania Public Utility Commission (PUC) adopted October 29, 1982, and entered November 3, 1982, ordering payment of refunds to PG&W's water customers.[1]

This is a complex case which began more than ten years ago. The procedural and factual history was fully set forth by the PUC in its November 1982 opinion and order, the pertinent parts of which follow:

> On January 30, 1973, the Pennsylvania Gas and Water Company (PG&W) filed a two-step water rate increase to produce $4,870,103 in additional annual operating revenues based upon a test year ending September 30, 1972. The $2,213,683 first-step became effective by operation of law on April 12, 1973. By order dated

---

[1] By order and opinion adopted and entered on December 3, 1982, the PUC denied PG&W's petition for reconsideration and modification and affirmed its order of November 3, 1982.

April 10, 1973, the Commission suspended the $2,656,420 second-step increase, and instituted an investigation at R.I.D. 72. Following 13 days of public hearing, the Commission, by Order adopted July 9, 1974, disallowed $628,318 of the second-step of the rate increase. Pa. P.U.C. v. Pennsylvania Gas and Water Company—Water Division, 47 Pa. P.U.C. 750 (1974).

The R.I.D. 72 Order was based in part on the disallowance in PG&W's original cost measure of value of $2,558,634, representing water facilities constructed with the proceeds of a highway damage payment; the exclusion of the property constructed with these monies from consideration in the determination of the fair value rate base; and the disallowance of the annual depreciation expense associated with the property constructed with these monies. The $2,558,634 represented a Department of Highways payment to PG&W for damages which were to be inflicted on its water supply property as a result of highway construction, less the unrecovered investment in the facilities rendered useless.

Pursuant to the R.I.D. 72 Order, the Company, on July 31, 1974, filed tariff supplements increasing its water rates to produce $2,028,102 in additional annual revenues effective for service rendered retroactive to March 15, 1974, the date on which temporary rates were established.

PG&W, the City of Scranton and the County of Lackawanna appealed the R.I.D. 72 Order to the Commonwealth Court. The Commonwealth Court reversed the Order in respect to

the findings relating to the water facilities financed with the highway damage payment. Pa. P.U.C. v. Pennsylvania Gas and Water Co. (hereinafter "PG&W I"), 19 Pa. Commonwealth Ct. 214, 341 A.2d 239 (1975). The Court remanded the matter to the Commission with the following instructions:

". . . to amend its rate-based calculations, both for net original cost and fair value, by including the appropriate amount of money representing the payment by the Pennsylvania Department of Transportation to Pennsylvania Gas and Water Company under the agreement dated October 21, 1969, to amend its findings with regard to annual depreciation to be allowed on the said property involved in the rate-base adjustment mentioned immediately hereinbefore, and to make any other cost of service adjustments which may be necessary as a result thereof. . . ."

. . . The Commission petitioned the Supreme Court of Pennsylvania on June 26, 1975, for an allowance of appeal.

On January 17, 1975, PG&W had filed a two-step water rate increase to produce $2,643,212 in additional annual operating revenues based upon a test year ending September 30, 1974. The $1,321,606 first-step increase was permitted to become effective by operation of law on March 26, 1975. The $1,321,606 second-step increase was suspended by Commission Order dated March 25, 1975, pending further investigation of the entire increase at R.I.D. 209. Following four days of public hearings, the Commission, by Order entered August 4, 1976, ap-

proved the $1,321,606 first-step increase but disallowed the $1,321,606 second-step increase in its entirety. In upholding the first-step of the increase, the Commission, in accordance with the Commonwealth Court's PG&W I decision, included in its rate base and depreciation expense determinations, the facilities financed with the Department of Highways damage payment.

PG&W appealed both the fair value and fair rate of return findings made by the Commission in the R.I.D. 209 proceeding to the Commonwealth Court. . . . [T]he Court held that the Commission's fair value finding constituted a manifest abuse of discretion. Since the Court concluded as a matter of law that the fair value of the water property was well in excess of the amount necessary to support the entire rate increase, it did not remand the matter for further proceedings nor did it address the fair rate of return finding. The Court instead ordered the Commission to allow the second-step rates as the Company's permanent rates. See Pennsylvania Gas and Water Co. v. Pa. P.U.C. (hereinafter "PG&W II"), 33 Pa. Commonwealth Ct. 143, 381 A.2d 996 (1977). On January 20, 1978, the Commission petitioned the Pennsylvania Supreme Court for an allowance of appeal.

Subsequently, the Commission by its Order of February 24, 1978, permitted the second-step R.I.D. 209 rates to become PG&W's effective water rates on April 1, 1978, and allowed the Company to recoup such rates retroactively to January 1, 1976, the date on which temporary rates had been established.

On April 28, 1978, PG&W filed a water rate increase designed to produce $5,551,536 in additional annual operating revenues based upon a test year ending December 31, 1977. The Commission suspended the rate increase, pending its investigation at R-78040597, and consolidated therewith the complaints of Philip Duick at C-R0597001, the Office of Consumer Advocate (OCA) at C-R0597002 and the Scranton Tripps Park Civic Association at C-R0597003. Pursuant to a settlement agreement reached between PG&W and the Commission Trial Staff, Administrative Law Judge JOSEPH L. COHEN issued a Recommended Settlement Decision recommending that the settlement rates providing $3,886,137 in additional annual operating revenues be permitted to become effective.

By Order entered August 11, 1978, the Commission, without making any specific findings, adopted Judge COHEN's Recommended Decision and ordered . . . that the Commission's investigation at R-79040597 be terminated without prejudice to the rights of the complainants.

The OCA did not acquiesce in the settlement, but elected to pursue its complaint at C-R0597002. The other two complainants did not respond to the Commission's Order. . . . By Recommended Decision dated July 26, 1979, Judge COHEN found that the complaints at C-R0597001, et al., should be dismissed and concluded, based upon his findings, that the settlement rates were clearly reasonable.

Approximately three years after the issuance of the PG&W I decision and approximately one and one-half years after the issu-

ance of the PG&W II decision, the Supreme
Court of Pennsylvania, on June 21, 1978, at
Docket Nos. 35 May Term 1978 and 278 January
Term 1978, granted the Commission's petitions
seeking allowance of appeal. Subsequently,
the Court, on February 1, 1980, reversed
the Commonwealth Court decisions and
reinstated the Commission's Orders at R.I.D.
72 and R.I.D. 209. Pa. P.U.C. v. Pennsylvania
Gas and Water Company—Water Division, 492
Pa. 326, 424 A.2d 1213 1980. . . . The Supreme
Court's opinion did not address the issue of
whether refunds should be ordered with respect
to any rates collected in excess of those
authorized by the reinstated orders.

. . . .

Following the Court's February 1, 1980 decision,
the instant complaint at C-80031919
et al., was instituted on March 21, 1980, seeking
refunds of any rates collected in excess of the
rates authorized in the R.I.D. 72 and R.I.D. 209
Orders and any subsequent Commission order
which had followed the PG&W I and PG&W
II decisions, alleging that PG&W's then existing
water rates (R-78040597) may be unreasonable.

. . . .

By Commission Order issued July 15, 1980,
the complaints at C-R0597001 et al., in opposition
to the R-79040597 settlement rates, were
consolidated with the instant complaint proceeding.

On April 24, 1981, PG&W filed tariff supplements
cancelling the R-78040597 settlement
rates and placing into effect a water rate in-

crease designed to produce some $2.3 million in additional annual operating revenues pursuant to the Commission's Order at R-8001265. The facilities financed with the Department of Highways damage payment were excluded from the Commission's fair value rate base determination in that proceeding.

. . . .

In his Recommended Decision Administrative Law Judge JOSEPH J. KLOVEKORN recommended:

1. That the Commission's Complaint be sustained.

2. That the Company be required to refund $6,569,749, which includes interest at the legal rate through April 23, 1981, together with interest at the legal rate from April 23, 1981 through the date of refund.

3. That the refunds be accomplished within a period of five years from the date of entry of the Commission's Order herein.

Exceptions and Replies to Exceptions have been filed by PG&W, the Staff, and the OCA.

By order adopted August 13, 1982, and entered August 23, 1982. the PUC concluded that the R-78040597 settlement rates were excessive and ordered refunds in the amount of $1,093,059; additionally, the proceedings remained open. Subsequently, by the order adopted October 29, 1982, and entered November 3, 1982, the PUC reiterated its order of the refund of $1,093,059, plus interest upon that principal sum from the date of payment of excessive rates through August 31, 1982; ordered the refund of $7,738,443 in principal and interest relevant to the other rates at issue; and terminated the proceedings.

424

The PUC is empowered to order refunds by Section 1312(a) of the Public Utility Code, 66 Pa. C. S. §1312(a), which states in pertinent part:

> General rule—If, in any proceeding involving rates, the commission shall determine that any rate received by a public utility was unjust or unreasonable, . . . the commission shall have the power and authority to make an order requiring the public utility to refund the amount of excess paid by any patron, in consequence of such unlawful collection. . . . In making a determination under this section, the commission need not find that the rate complained of was extortionate or oppressive.

Rates to be collected by a public utility must be just and reasonable, a determination which is made by the PUC. In the instant case, the PUC considered the rates proposed by PG&W in R.I.D. 72 and R.I.D. 209, determined that they were not just and reasonable and disallowed them. The rates permitted by the PUC produced less of an increase in annual revenues than was sought by PG&W. Because of the decisions by this Court in *PG&W I* and *PG&W II*, PG&W collected rates which the PUC had determined were not just and reasonable.[2]

It is our opinion that when the PUC finds that proposed rates are not just and reasonable, then such rates must be unjust and unreasonable by definition. We do not believe that a disallowance of rates by the

_____

[2] Although this Court reversed the order of the PUC on R.I.D. 72 in *PG&W I*, the PUC order was not amended nor was PG&W granted an increase. Consequently, refunds are not required relative to this proceeding. The importance of our decision in *PG&W I* was that the Pennsylvania Department of Transportation (DOT) contributed property was included in PG&W's rate base following our decision.

PUC means that the disallowed rates are less just and reasonable than those allowed; rather, that the PUC has determined that the disallowed rates are unjust and unreasonable.

For this reason, the reinstatement by our Supreme Court in *Pennsylvania Public Utility Commission v. Pennsylvania Gas and Water Co. (Pa. PUC v. PG&W)*, 492 Pa. 326, 424 A.2d 1213 (1980), *cert. denied*, 454 U.S. 824 (1981), of the rates originally approved by the PUC meant that the rates collected above these just and reasonable rates were unjust and unreasonable. The PUC need not show more in order to justify ordering refunds under Section 1312, for rates collected by PG&W pursuant to *PG&W I* and *PG&W II*.

Central to the issue of whether the rates proposed by PG&W should have been permitted to become effective under R.I.D. 72 and R.I.D. 209 was the question of whether monies paid by DOT to PG&W were properly excluded from PG&W's rate base by the PUC. The settlement agreement docketed at R-78040597 permitted implementation of a tariff at a time when *PG&W I* and *PG&W II* were on appeal to our Supreme Court; therefore, this Court's inclusion of the monies in the rate base was necessarily accepted by the PUC in its agreement to the settlement, and the DOT monies were included in the rate base upon which the settlement agreement was based. The settlement rate was, however, subject specifically to refunds should the settlement rates prove to be excessive.[3]

Because the Pennsylvania Supreme Court determined in *Pa. PUC v. PG&W* that the original PUC rates at R.I.D. 72 correctly excluded the DOT monies

---

[3] By order of the PUC adopted September 21, 1978, and entered September 28, 1978.

from the rate base, the PUC was correct in subsequently determining that the settlement rates at R-78040597 were unjust and unreasonable, due to the inclusion of DOT monies in the rate base for the settlement rate.

We hold, therefore, that the PUC was acting within its statutory authority when it ordered PG&W to pay refunds of rates collected under R.I.D. 209 and R-78040597. PG&W, of course, relied upon the decisions of this Court in collecting rates which were held ultimately to be in excess of those which the PUC adjudged just and reasonable. This reliance, unfortunately for PG&W, was misplaced and PG&W must now bear the burden of compliance with the PUC refund order. Nor is it material, as argued by PG&W, that our Supreme Court did not address the issue of refunds; having found that the role of the PUC is to set just and reasonable rates and having reinstated the PUC rates, the Court left the PUC free to fulfill its statutory role as defined by Section 1312(a).

PG&W questions whether the PUC erred in ordering refunds based upon the employment of an original cost ratemaking standard rather than a fair value ratemaking standard. The decision of the Supreme Court in *Pa. PUC v. PG&W* is the law of this case. That decision authorized the method of valuation used by the PUC to determine the rates which the Court ordered reinstated; therefore, the correctness of the rates has already been determined. The refunds ordered by the PUC are based upon these rates. It follows that PG&W must accept the propriety of the ratemaking process in the instant case and cannot use this appeal to re-litigate an issue which has been finally decided.[4]

---

[4] Our Supreme Court considered the ratemaking process at length. stating that,

PG&W further asserts that the PUC erred in directing refunds when it specifically found that PG&W did not achieve excessive returns under the effective rates. In its November 3, 1982, opinion the PUC concluded ''that PG&W most probably did not experience excessive earnings during the period of time with which we are here concerned.'' Certainly, a major consideration in determining utility rates is to establish rates which do not produce excessive returns, but which do afford the utility an opportunity to earn a fair and reasonable return on property used and useful in the public service. *Western Pennsylvania Water Company v. Pennsylvania Public Utility Commission,* 54 Pa. Commonwealth Ct. 187, 422 A.2d 906 (1980). Ratemaking principles require prospective ratemaking based upon a test year. The rates at issue in the instant case were found to be just and reasonable, and retrospective analysis of PG&W's actual returns is not required in determining the propriety of refunds.

PG&W attempted to show that it had suffered an earning deficiency during the time for which the PUC ordered refunds. PG&W did not, however, use earnings figures derived on a ratemaking basis but rather claimed the deficiency on a financial accounting basis. For that reason, the PUC was unable to quantify any

Reproduction cost figures are clearly admissible in PUC proceedings but we see nothing in the "fair value" rule that requires, either as a statutory or constitutional mandate, that they *must be accepted* in whole or in part for valuation purposes. We, therefore, repudiate any intimations in these decisions or in prior case law that has the effect of suggesting a constitutional mandate requiring the inclusion of reproduction cost figures in arriving at the appropriate rate structure in public utility valuation cases. (Emphasis in original.)

*Pa. PUC v. PG&W,* 492 Pa. at 340-41, 424 A.2d at 1221.

deficiency which may have existed. Additionally, whether PG&W actually suffered an earnings deficiency is not determinative in the question of ordering refunds. A rate increase may act prospectively only; even where a rate case results in an allowance of a rate increase immediately following a period for which refunds were ordered, this cannot be the basis for denying the refunds. *See Magee Carpet Co. v. Pennsylvania Public Utility Commission*, 174 Pa. Superior Ct. 438, 102 A.2d 229 (1954). The PUC clearly considered the financial data offered by PG&W. It was within the PUC's discretion to reject that data when determining the amount of refunds to be ordered, and this is clearly what was done.

PG&W next contends that the PUC manifestly abused its discretion by ordering refunds despite evidence of record that the refunds would jeopardize PG&W's financial standing and its rates and services to its customers. The PUC carefully considered the impact of the refunds upon PG&W and weighed the interests involved. While acknowledging the existence of risk in the order of refunds, the PUC found it to be the appropriate decision. ''Unless the PUC's decision does not bear a real and substantial relationship to the regulatory objects sought to be obtained by it, that judgment must prevail.''[5] We find that the PUC has met that standard in their decision to order PG&W to pay refunds.

PG&W objects to the PUC's refusal to allow exceptions to the draft opinions and orders prepared by its Office of Special Assistants (OSA). The relevant statutory section reads in pertinent part:

Exceptions or proposed findings and conclusions—Before a recommended initial or

[5] *Id.* at 339, 424 A.2d at 1220.

tentative decision issued under this section, or a decision on commission review of the decision of subordinate employees, the parties are entitled to a reasonable opportunity to submit for the consideration of the commission:

. . . .

(ii) exceptions to the decisions or recommended decisions of subordinate employees or to tentative commission decisions. . . .

66 Pa. C. S. §335(b).

Opinions and orders prepared for the PUC by the OSA do not fall within the ambit of Section 335(b). The PUC assigns matters to the OSA after having determined its decision on the issues through consideration of the record and the decision of the administrative law judge (ALJ). PG&W had the opportunity to, and did, submit exceptions to the recommended decisions of the ALJs in the instant case. PG&W has been afforded its full statutory rights in this regard.

PG&W's final argument is that the PUC has violated PG&W's rights of due process and equal protection of the laws through the order of refunds under the present circumstances. We find this contention to be without merit.

At the time this Court reversed the PUC in *PG&W I* we decided a similar case involving the Keystone Water Company, *Keystone Water Co., White Deer District v. Pennsylvania Public Utility Commission (Keystone)*, 19 Pa. Commonwealth Ct. 292, 339 A.2d 873 (1975).[6] The Pennsylvania Supreme Court subsequently affirmed our decision in *Keystone* by

---

[6] Both *PG&W I* and *Keystone* centered on the issue of whether highway damage payments made by DOT should be excluded from the utility's rate base. In both cases, this Court concluded that the payments should be *included* in the rate base.

430

an equally divided Court, *Keystone Water Co., White Deer District v. Pennsylvania Public Utility Commission*, 477 Pa. 594, 385 A.2d 946 (1978). Thus, the PUC was barred from ordering refunds because its original rates were reversed by the courts and never reinstated, contrary to the facts in the case *sub judice*. In its opinion in *Pa. PUC v. PG&W*, the Supreme Court discussed the error of this Court in *PG&W I* and *PG&W II and* the opinion in support of affirmance of *Keystone*. While the Supreme Court's decision in *Pa. PUC v. PG&W* may have overruled its decision in *Keystone*, it did not give the PUC the power to order that refunds be made by the Keystone Water Company. We conclude that the PUC has not violated PG&W's constitutional rights by ordering the refunds authorized by the reinstatement of the original PUC rates.

PG&W has had ample opportunity to assert its rights in the instant case. It has taken its case to the nation's highest court. While doing so, it has charged rates which it knew did not meet with the approval of the PUC, the regulatory agency to which PG&W is immediately accountable. PG&W must now bear the consequences of implementing those higher rates, in the form of refunds to its customers. Although this is a difficult, and perhaps unfortunate, result for PG&W, we hold that it is mandated by statute and by the facts of the case.

For the reasons stated above, the order of the PUC is affirmed.[7]

---

[7] The PUC has moved to quash portions of PG&W's brief, relating to PG&W's appeal docketed at 3056 C.D. 1982 which was dismissed by this Court as being improperly taken from an interlocutory PUC order, based upon PG&W's alleged failure to comply with Pa. R.A.P. 1513. (We note that the PUC failed to attach our orders relevant to 3056 C.D. 1982).

431

## ORDER

The order of the Pennsylvania Public Utility Commission entered November 3, 1982, at C-80031919, R.I.D. 72, R.I.D. 209 and C-R0597001-03, is hereby affirmed.

PG&W's petition for review in the instant case seeks judicial review of the PUC order entered November 3, 1982. This encompasses all of the matters objected to in 3056 C.D. 1982. Under the circumstances of this case, we do not find PG&W has waived any issues by failure to amend the petition for review. The PUC had ample notice of the issues, as did this Court, and no waiver occurred. In any case, our decision in affirmance of the PUC order from which PG&W has appealed renders moot the motion to quash.