543 A.2d 196

Duquesne Light Company, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

Joseph Horne Company, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

Argued March 23, 1988, before President Judge CRUMLISH, JR., and Judges CRAIG, MACPHAIL, COLINS, PALLADINO, MCGINLEY and SMITH.

*J. Tomlinson Fort,* with him, *Michael L. Browne* and *Gregory B. Jordan, Reed, Smith, Shaw* & *McClay; Charles E. Thomas,* with him, *Charles E. Thomas, Jr.* and *Patricia Armstrong, Thomas* & *Thomas,* and *Larry R. Crayne,* Corporate Attorney, for petitioner/intervenor, Duquesne Light Company.

*Dennis S. Shilobod, Messer, Shilobod* & *Crenney,* with him, *E. J. Strassburger, Strassburger, McKenna, Gutnick* & *Potter,* for petitioner/intervenor, Joseph Horne Company.

*John A. Levin,* Assistant Counsel, with him, *Bohdan R. Pankiw,* Deputy Chief Counsel, and *Daniel P. Delaney,* Chief Counsel, for respondent, Pennsylvania Public Utility Commission.

*Irwin A. Popowsky,* Assistant Consumer Advocate, with him, *Craig R. Burgraff* and *Joan C. Fitzpatrick,* Assistant Consumer Advocates and *David M. Barasch,* Consumer Advocate, for Office of Consumer Advocate.

OPINION BY JUDGE MACPHAIL, June 9, 1988:

Two appeals from orders of the Pennsylvania Public Utility Commission (PUC) have been consolidated for our appellate review. Duquesne Light Company (Duquesne) appeals from an order directing it to refund excess revenues collected by it for the period from July

15, 1981 to January 29, 1982. Joseph Horne Company (Horne) appeals from the order of the PUC denying its request for counsel fees and fixing the interest rate to be applied to the refund ordered by the PUC at 6 per cent per annum rather than at the average rate of interest specified for residential mortgage lending. We will affirm both PUC orders.

## BACKGROUND

Most of the necessary background for this case can be found in *Joseph Horne Company v. Pennsylvania Public Utility Commission (Horne I)*, 78 Pa. Commonwealth Ct. 566, 467 A.2d 1212 (1983), where we held that the PUC was statutorily empowered to permit a general rate increase tariff requested by Duquesne to be withdrawn and a second supplement (Supplement 52) with a lower rate increase suggested by the PUC, to be filed at the option of Duquesne, with that increase to become effective immediately pending investigation and final approval.

On Horne's further appeal to our Supreme Court, that Court in *Joseph Horne Company v. Pennsylvania Public Utility Commission (Horne II)*, 506 Pa. 475, 485 A.2d 1105 (1984), held that the PUC's "option procedure" violated the procedural and substantive provisions of Sections 1308(e) and 1310(a) of the Public Utility Code (Code), 66 Pa. C. S. §§1308(e) and 1310(a). The order of that Court disposing of the appeal reads as follows:

> Order of Commonwealth Court reversed and case remanded to the Public Utility Commission for proceedings consistent with this opinion.

506 Pa. at 488, 485 A.2d at 1111.

Acting upon its interpretation of the meaning of that order[1] the PUC, on April 9, 1986, having concluded

---

[1] Apparently none of the parties to the litigation requested a clarification of the Court's order.

that the revenues collected by Duquesne pursuant to Supplement 52 were unjust, unreasonable and unlawfully collected, ordered Duquesne to file a refund plan. The plan was filed January 8, 1987 and, after exceptions thereto were addressed by an administrative law judge and reviewed by the PUC, an order was entered on May 1, 1987 directing Duquesne to implement the plan.

As we have noted, Duquesne has appealed here from the order directing it to refund $32,667,623 (before the addition of interest) collected by Duquesne from its customers pursuant to Supplement 52. Horne's appeal is from Duquesne's refund plan approved by the PUC in that it makes no provision for the award of counsel fees to Horne and it fixes the interest to be refunded to customers, of which Horne is one, at 6 per cent per annum.

### DUQUESNE APPEAL (No. 991 C.D. 1987)

Duquesne argues that the PUC had no statutory authority to order a refund in the circumstances of this case, that the PUC failed to consider principles of equity in determining whether a refund should be ordered and that the economic effect of the refund denies the utility an adequate return on its investments in violation of its constitutional rights.

Section 1312(a) of the Code, 66 Pa. C. S. §1312(a), relating to refunds reads in pertinent part as follows:

(a)  If, in any proceeding involving rates, the commission shall determine that any rate received by a public utility was unjust or unreasonable, or was in violation of any regulation or order of the commission, or was in excess of the applicable rate contained in an existing and effective tariff of such public utility, the commission shall have the power and authority to make

an order requiring the public utility to refund the amount of any excess paid by any patron, in consequence of such unlawful collection, within four years prior to the date of the filing of the complaint, together with interest at the legal rate from the date of each such excessive payment.

Duquesne contends that since none of the three statutory conditions which authorize the PUC to award a refund are present here, the PUC's order is invalid.

We turn now to the Supreme Court's opinion and order in this matter, *Horne (II)*. In its analysis of the categories of rates authorized by the Code, the Court pointed out the different statutory restrictions applicable to temporary rates, general rate increases and extraordinary rate relief. *See* Sections 1308(d) and (e) and 1310 of the Code. Of particular significance to the Court was the following pertinent language in Section 1308(d) authorizing general rate increases:

[T]he commission shall have no authority to prescribe, determine or fix, at any time during the pendency of a general rate increase proceeding or prior to a final determination of a general rate increase request, temporary rates as provided in Section 1310, which rates may provide retroactive increases through recoupment.

The Court held that the import of that language was to prevent the unrestricted use of interim rate increases since utilities seeking immediate relief could obtain such relief by filing for extraordinary relief or a temporary rate increase.

In summary, the Court held that the PUC's option procedure impermissibly avoided the substantive and procedural protections of Sections 1308(e) and 1310(a) and defeated the overall legislative scheme. Then followed the Court's order hereinbefore set forth in full.

We have no difficulty in determining that the Supreme Court found the implementation of Supplement 52 to be *unlawful*. While it is true that the word "unlawful" does not appear in Section 1312, we are convinced that rates which are unlawful are, of a certainty, unreasonable and unjust. Any other interpretation of that language would cause us to reach an absurd result which would be contrary to the statutory presumption regarding legislative intent. Section 1922(1) of the Statutory Construction Act of 1972, 1 Pa. C. S. §1922(1).

In *National Fuel Gas Distribution Corporation v. Pennsylvania Utility Commission*, 81 Pa. Commonwealth Ct. 148, 473 A.2d 1109 (1984), we affirmed a PUC order requiring a gas service utility to refund gas cost rate revenues determined by the PUC to have been unlawfully collected. The utility challenged the PUC's authority to order a refund where the utility collected increased revenues on gas cost rates not previously approved by the PUC. We held that where the utility had collected revenues on a tariff filed, but not approved by a majority of the members of the PUC, the PUC could direct a refund under Section 1312. While it may be argued that the circumstances in *National Fuel* differed from the matter now at hand, we believe that the unlawfully filed tariff in *National Fuel* can be equated to the unlawful interim rates which are at issue here, and that the result must be the same.

Duquesne puts much emphasis on the language and the result reached by the U.S. Supreme Court in *Atlantic Coast Line Railroad Company v. Florida*, 295 U.S. 301 (1935). There, the requested refunds concerned charges collected by a railroad carrier in accordance with an order of the United States Interstate Commerce Commission (ICC) which was eventually declared by the U.S. Supreme Court to be unlawful be-

cause the ICC failed to make factual findings in support thereof. The ICC ultimately found the carrier's rates to be just and reasonable. A number of shippers brought an action for refunds collected under the original unlawful ICC order. The U.S. Supreme Court denied the refunds holding that since it was not clear that the money received by the carrier was offensive to equity and good conscience and since the carrier was at all times following the mandates of the ICC and the practical effect of a refund would result in confiscation, the combination of these factors compelled the Court to conclude that it should not intervene to order a refund in the exercise of its equitable and discretionary powers.

Analyzing the circumstances here with those present in *Atlantic Coast Line*, Duquesne notes that the PUC, after investigation, did on April 19, 1982 approve the rates set forth in Supplement 52 and that no appeal was taken from the order. Duquesne contends that since it was the PUC that suggested the rates authorized by Supplement 52, the utility should not be penalized for following that authorization. Duquesne further contends that the PUC made no reference to equitable considerations in its adjudication and that the net result of the implementation of the refund will be to deny at a fair return on its investment.

At the outset, we must note the obvious—*Atlantic Coast Line* is a federal case construing federal law. Second, we note that the court in *Atlantic Coast Line,* at several points, indicated that the charges would have been lawful had there been no "blunders" or "slips" of *procedure*. In contrast, our Pennsylvania Supreme Court in *Horne II* found that PUC's actions avoided the procedural *and* substantive protections afforded rate payers by the Code. With regard to equitable considerations, we must observe that Duquesne made the choice to proceed with Supplement 52. It could have

proceeded with its original application for a rate increase seeking $100,000,000 rather than filing Supplement 52 to produce revenues of $64,237,000. Equity should not intervene where those seeking its aid are at least in part responsible for the circumstances which they now contend have produced an inequitable result.

Finally, this court held in *Pennsylvania Gas and Water Company v. Pennsylvania Public Utility Commission,* 79 Pa. Commonwealth Ct. 416, 470 A.2d 1066 (1984), that even where the PUC allows a rate increase immediately after a period for which refunds were ordered, this cannot be the basis for denying the refunds. To the extent Duquesne can prove that the refund will affect its financial integrity or have an adverse economic impact upon its operations, the utility always can avail itself of the avenues of relief provided by the Code where circumstances which would warrant relief are found to exist.

Duquesne also argues that it should have been afforded a hearing before the refund order was promulgated. We are satisfied that the issue of whether a refund should have been ordered was a matter of law, thoroughly briefed by all parties and that a hearing would have added nothing to the already extensive record in this case.

Being satisfied that there has been no error of law and that none of Duquesne's constitutional rights have been infringed upon, we will affirm the order of the PUC.

### HORNE APPEAL (No. 1057 C.D. 1987)

Horne argues that the PUC had erred when it did not accept the recommendation of the Administrative Law Judge that Duquesne should pay interest on the refunds to tax payers on the average daily rate specified for residential mortgage lending.

As we have previously noted, Section 1312(a) of the Code specifically states with respect to refunds that interest shall be at the "legal" rate. The Administrative Law Judge, however, invoked that part of Section 1308(d) which provides for the residential mortgage lending rate as the rate of interest to be imposed. A careful reading of both sections will reveal that Section 1312(a) interest is imposed where the PUC has ordered a refund based upon its finding that one of the three conditions exists for the entry of a refund order. We have previously held herein that the unlawful rate imposed by Duquesne was unjust and unreasonable. Section 1308(d) interest on the other hand, is specifically authorized where the PUC has failed to act on a general rate increase application for seven months, and the increase automatically goes into effect, but it is later determined that the rates in whole or in part were not justified. That, of course, is not the situation presented to us here. We, therefore, affirm the decision of the PUC fixing interest at 6 per cent per annum.[2]

Horne argues that its request for a $125,000 in counsel fees was invalidly denied by the PUC. It is true, as argued by Horne, that an exception to the "American rule" that a litigant is ordinarily responsible for the fees of counsel employed by him, has been found to exist where a common fund is created by counsel which benefits others as well as his client. *Nagle v. Pennsylvania Insurance Department*, 46 Pa. Common-

---

[2] Section 202 of the Act of January 30, 1974, P.L. 13, 41 P.S. §202, reads as follows:

Reference in any law or document enacted or executed heretofore or hereafter to 'legal rate of interest' and reference in any document to an obligation to pay a sum of money 'with interest' without specification of the applicable rate shall be construed to refer to the rate of interest of six per cent per annum.

wealth Ct. 621, 406 A.2d 1229 (1979), *reversed in part on other grounds*, 499 Pa. 139, 452 A.2d 230 (1982). Here, Horne contends that its counsel's efforts resulted in a fund in excess of $32,000,000 exclusive of interest which benefits all of Duquesne's rate payers who were customers during the time period from July 15, 1981 to January 29, 1982. Recognizing that there is no specific authority in the Code which would permit the PUC to award counsel fees, Horne suggests that the PUC's power in this respect is no less than the power of a court of equity.

Our Supreme Court has recently affirmed that the power and authority exercised by an administrative commission must fall within the strict and exact limits of the statutory provisions under which it operates because such tribunals are "extra judicial." *Process Gas Consumers Group v. Pennsylvania Public Utility Commission*, 511 Pa. 88, 511 A.2d 1315 (1986). In *Pennsylvania Board of Probation and Parole v. Baker*, 82 Pa. Commonwealth Ct. 86, 474 A.2d 415 (1984), we reversed an award of counsel fees made by the State Civil Service Commission in a case where two individuals had successfully appealed to that Commission the promotion procedures of the Board of Probation and Parole. There, as here, it was contended that Section 2503 of the Judicial Code, 42 Pa. C. S. §2503, which provides for the award of counsel fees in certain enumerated circumstances, is broad enough to give administrative commissions the authority to award counsel fees. We held to the contrary. For the reasons set forth in *Baker,* we again hold that the provisions of Section 2503 are limited to the components of the unified judicial system of which the PUC is not a part.

Inasmuch as there is no statutory authorization for the PUC to act, we will affirm the adjudication of the PUC denying counsel fees to Horne.

## SUMMARY

Being satisfied that none of Duquesne's and Horne's constitutional rights have been violated, that the PUC adjudications are in accordance with the law, that the proceedings before the PUC have been proper and that all necessary findings of the PUC are supported by substantial evidence, *see* 2 Pa. C. S. §704, we will affirm the PUC's orders.

## ORDER

The orders of the Pennsylvania Public Utility Commission in the above-captioned matter are affirmed.